Ex parte JAMES THORNBERRY, Petitioner.

In Banc, October 6, 1923.

1. **PAROLE: Stay of Sentence upon Condition.** Where defendant, upon his plea of guilty to a felony, was sentenced to imprisonment, a stay of execution upon condition that if he were found in the county after six o'clock of the day upon which sentence was pronounced he was to be arrested and committed to the penitentiary according to such sentence, bears no resemblance to a parole.

2. **PLEADING**: Habeas Corpus: Admissions of Return: No Denial. Unless the facts pleaded in the return to a writ of *habeas corpus* are denied by petitioner, they are to be taken as the ultimate facts of the case. The return constitutes the principal pleading and is not intended to be responsive to the petition, but to the writ, and its allegations of fact may be met by a denial, or by the allegation of any fact to show that the detention is unlawful.

3. **HABEAS CORPUS**: Return: Commitment upon Re-Sentence: Irregularities. To the writ of *habeas corpus* the warden of the penitentiary in his return states that he has the petitioner in his custody by virtue of a certified copy of a sentence and judgment of the circuit court, and attaches thereto a certified copy of the judgment, which shows that the petitioner appeared in court in the custody of the sheriff and in the presence of his attorney "is informed that he has heretofore been sentenced to the penitentiary for a term of two years, at which time a stay of execution was granted until six o'clock in the afternoon of the day on which sentence was passed, conditioned that if he was found in the county after that time he was to be arrested and committed to the penitentiary as per sentence heretofore passed," and it is therefore ordered that the defendant, "having been found and arrested in said county, be committed accordingly, and that the sheriff of this county shall, without delay, remove and safely convey said defendant to the penitentiary, there to be kept," etc. *Held*, that it is manifest that this re-sentence is a rescript or repetition of an unsatisfied judgment theretofore entered, and while it would have been more nearly in conformity with the literal requirements of the statute to have based the commitment upon said original judgment, the defendant has not suffered injury by reason of the re-sentence and commitment thereunder, and the irregularity is not of sufficient substance to warrant his discharge.

4. **JUDGMENT**: Suspension: Indefinite Stay. A court has power, in the exercise of its discretion and even in the absence of an authorizing statute, to suspend sentence a reasonable time for a proper purpose, such as to file a motion for a new trial or to procure bail; but no court has power to stay execution permanently or indefinitely.

5. ———: Indefinite Stay: Banishment: Harmless Condition. A recital in a judgment that defendant's sentence of two years' imprisonment is stayed upon condition that he leave the county and remain away, although more properly characterized as an edict of banishment, is in effect an indefinite stay of execution, and is void; but it does not affect the validity of separable authorized portions of the judgment, and no harm comes to defendant from a commitment according to the original sentence.

6. ———: ———: Pardons: Judicial and Executive Powers. The power to grant pardons and reprieves and the power to sentence a defendant according to a valid verdict or plea of guilty are distinct and different in their origin and nature, the one being executive and the other judicial; and for a court to suspend a sentence indefinitely or to stay its execution would be a usurpation by the judicial department of the powers and functions committed to the executive department of the government. A court's power, in the administration of the criminal law, is limited, upon the final conviction of an accused, to the imposition of the sentence authorized by the law to be imposed.

7. ———: Stay of Execution upon Condition: Change in Sentence: Compliance. Where defendant, upon his plea of guilty to a felony, was sentenced to imprisonment for a term authorized by the statute, and a stay of execution was entered upon condition that he leave the county within a designated time. and remain away, and being found in the county was arrested and brought into court, and at the same term re-sentenced to the same imprisonment, the attempted stay of execution was void, and being separable from the authorized portions of the judgment the valid parts thereof were not affected by the condition imposed, and the re-sentence was unnecessary, but only an immaterial irregularity, and no change was made in the punishment, nor was the original sentence in any wise nullified by a compliance with the void condition, since he was under no legal obligation to comply therewith, and his commitment according to said original sentence was valid, whether it recited the first or the second judgment. [Distinguishing Ex parte Cornwall, 223 Mo. 259, and Ex parte Lange, 18 Wall. 163.]

8. ———: Amended Return: After Submission.. *Held*, by GRAVES, J., dissenting, that respondent in *habeas corpus* should not be permitted to file an amended return after the cause is submitted; nor should an amended return be permitted without notice to petitioner or his counsel; or should a change in the issues in any case be permitted after it has been submitted, unless the order of submission be first set aside.

## *Habeas Corpus.*

PRELIMINARY RULE DISCHARGED.

*C. I. Bennington* for petitioner.

*Jesse W. Barrett,* Attorney-General, for the State.

WALKER, J.—The writ of *habeas corpus* is here invoked to effect the release of the petitioner from the penitentiary, where he is imprisoned under a two years' sentence rendered by the Circuit Court of Pettis County, following his plea of guilty to a felony, with the commission of which he was formally charged and arraigned in that court.

The return filed herein of the Warden of the Penitentiary, omitting the caption and his official signature, is as follows:

"For return to the writ of *habeas corpus* J. S. Crawford, Warden of the Missouri State Penitentiary, states that he has the said James Thornberry in his custody by virtue of and under a certified copy of a sentence and judgment of the Circuit Court of Pettis County, Missouri, a copy of which is hereto annexed.

"And the said J. S. Crawford further states that the petitioner having waived the production of his body before this Honorable Court on the hearing of the application for a writ of *habeas corpus,* or at any other time that he would be entitled to be present in the course of this proceeding, which waiver is now on file with the papers in this case, for this reason does not produce the body of the petitioner."

Attached thereto is the following:

"In The Circuit Court Of Pettis County, June Term, 1923.

"Be It Remembered, That heretofore, to-wit, on the 20th day of June, A. D. 1923, at the regular June term of the Circuit Court, begun and held at the court house, in the city of Sedalia, in the county and state aforesaid, before the Honorable Dimmitt Hoffman, Judge of the Thirtieth Judicial Circuit of the State of Missouri, and judge of said court, the following among other proceedings were had, to-wit:

"Now, at this day comes the prosecuting attorney for the State, and also comes the defendant herein, in

person, in custody of the sheriff of this county, and in the presence of his attorney and counsel in open court, whereupon said defendant is informed by the court that he has heretofore been sentenced to the Penitentiary of the State of Missouri for a period of two years, at which time a stay of execution was granted until six o'clock in the afternoon of the day on which sentence of the court was passed, conditioned that if he was found in Pettis County after that time he was to be arrested and committed to the penitentiary as per sentence heretofore passed.

"It is therefore ordered by the court that the defendant, James Thornberry, having been found and arrested in said County of Pettis since the stay of execution has expired, be committed accordingly, and that the sheriff of this county shall, without delay, remove and safely convey the said defendant to the said penitentiary, there to be kept, confined and treated in the manner directed by law, and the warden of said penitentiary is required to receive and safely keep him, the said defendant, in the penitentiary aforesaid until the judgment and sentence of the court herein be complied with, or until the said defendant shall otherwise be discharged by due course of law. It is further considered, ordered and adjudged by the court, that the State have and recover of said defendant the costs in this suit expended, and that execution issue therefor."

The certificate of clerk that the foregoing is a true copy is omitted.

I. The State, in opposing the granting of this writ, urges that the stay granted was in the nature of a parole and the petitioner having violated the same is not entitled to be discharged. The modification made by the judge of the circuit court of the otherwise formal judgment of conviction bears no resemblance to a parole. This form of clemency authorized by our law (Secs. 4157-4167, R. S. 1919) possesses certain

**Parole.**

distinctive features which constitute necessary conditions to the legal operation of the statute. The utter absence from the record of all of these conditions renders a specific reference to them unnecessary. [Ex parte Cornwall, 223 Mo. l. c. 270.] It will be enough to say, therefore, that the construction of this judgment as embodying a parole is not tenable and cannot be sustained.

II.   The condition of this record is such that the authorized consideration of the matter at issue might be limited to a somewhat narrow compass but for the construction placed by the petitioner upon the cases cited in support of the issuance of the writ. While a return to a writ of *habeas corpus* is not of itself conclusive under our practice, as it was at common law and under the Habeas Corpus Act (31 Car., II C 2), where, as here, the facts pleaded in the return are not denied, they are to be taken as the ultimate facts in the case. [In re Tartar, 278 Mo. l. c. 365; In re Breck, 252 Mo. l. c. 319; Ex parte Durbin, 102 Mo. l. c. 104; Ex parte Bryan, 76 Mo. 253.] Constituting as the return does the principal pleading it is not intended to be responsive to the petition but to the writ; its allegations, therefore, may be met as the statute (Sec. 1903, R. S. 1919) provides by a denial of the material facts set forth therein or the allegation of any fact to show that the detention complained of is unlawful and that the petitioner is entitled to a discharge. In the absence of such a pleading the facts set up in the return become conclusive; and the only question left for determination is whether these facts authorize the restraint as a matter of law.

*Admissions of Return.*

III.   First let us consider the formal sufficiency of the return. Here, as in many other jurisdictions, the requisites of a return have been prescribed by statute (Sec. 1891, R. S. 1919). They are in short that the person upon whom the writ has been served shall state if he has the petitioner in his custody and if so the authority for such re-

*Commitment on Re-Sentence.*

straint; if detained by virtue of any writ, warrant or other written authority, a copy thereto shall be annexed to the return.

The warden of the penitentiary, as disclosed by his return, states that he has the petitioner in his custody by virtue of and under a certified copy of 'a sentence and judgment of the Circuit Court of Pettis County and attaches thereto a copy of the latter. This copy embodies all of the essentials of a formal judgment upon a conviction for a felony. [Sec. 4059, R. S. 1919.] Aside from the admission of its correctness in the failure of the petitioner to deny the same, its verity is further attested by the general presumption of legality which always attends the records of a judicial proceeding. As a further manifest of the conformity of this sentence with the facts upon which the original judgment was rendered, it is shown that the petitioner was present when it was rendered and neither then raised or now raises any objection to its correctness. However, it is apparent from the instrument itself that it is a rescript or a repetition of a judgment heretofore entered against the petitioner which remains unsatisfied and upon which he is re-sentenced. While this is not urged as a ground for his discharge its presence on the face of the return renders its consideration pertinent in determining the legality of the petitioner's restraint. It may be admitted that it would have been more nearly in conformity with the literal requirements of the statute (Section 4059, supra) if the commitment had been based upon the original judgment; but, in what respect has the petitioner suffered injury by reason of his formal re-sentence and commitment thereunder? A judgment was outstanding against him, which without any pretense remains unsatisfied. His arrest by the officer was authorized upon this unsatisfied judgment, and if the officer did not have a copy of same he could have obtained it from the clerk of the circuit court (Sec. 4060, R. S. 1919). The proceeding therefore of haling the petitioner into court to be

re-sentenced and of committing him upon such re-sentence, while irregular and unnecessary in view of the fact that this latter sentence conforms in all its material features to the original, is not of sufficient magnitude to warrant the petitioner's discharge. If it was deemed necessary this court might order the clerk of the circuit court to transmit to the warden a copy of the original sentence and judgment and require the latter to make a return based thereon. Fully appraised as we are of all of the facts as disclosed by the return, we do not deem the course indicated necessary, either in protection of the rights of the petitioner or in furtherance of a wholesome administration of the criminal law. We are not inclined therefore to grant this discharge on the ground that the instrument appended to the return, although embodying all of the material features of the original judgment, is not a literal copy of same. It is the essentials of the judgment and not its mere letter that are required by the statute (Sec. 1891, R. S. 1919) to accompany the return. This conclusion finds ample support in the cases cited and discussed by GRAVES, J., in Ex parte Hagan, 245 S. W. 336. These cases, while directed more particularly to the warrant under which the prisoner was held, clearly indicate that it is the requisites of a lawful detention, whether it be in the nature of a warrant or a judgment, that must be shown by the return and not necessarily a literal copy of the instrument itself. We therefore hold that the petitioner's detention is lawful unless the return discloses other conditions affecting its validity.

IV. The further condition to which we refer appears in the judgment of conviction as shown by the return and which it is contended by the petitioner invalidates his imprisonment. Following the usual judgment in cases of this character there was incorporated therein by the court the provision that a stay of **Stay of Execution.** execution was granted until six o'clock of the afternoon of the day on which the sentence was

rendered and if the defendant was found in Pettis County thereafter he was to be arrested and committed to the penitentiary as per the sentence theretofore passed. Having been found thereafter in said county he was arrested, re-sentenced and is now undergoing imprisonment in satisfaction of the original judgment. The condition imposed, while wholly unauthorized and more properly characterized as 'an edict of banishment rather than a stay of execution, did not vitiate the authorized portions of the judgment. [In re Frederick Knaup, 144 Mo. 653; State v. Bockstruck, 136 Mo. 1. c. 359.] That a court has power in the exercise of its discretion to suspend a sentence a reasonable time for a proper purpose there is no question. That purpose has usually been construed under our practice in the absence of any statute on the subject, to granting time to file a motion for a new trial or in arrest of judgment, to secure bail or to perfect or pending an appeal.

The effect of the condition incorporated by the court in the judgment was to indefinitely stay its execution. No such power is conferred on the courts. We so held in Ex parte Cornwall, 223 Mo. 259, which in this regard is in conformity with the requirements of the statute (Secs. 4060-4061, R. S. 1919), concerning the procedure upon a conviction for a felony, other than capital. [See cases cited in Ex parte Bugg, 163 Mo. App. 46, and in State v. Hockett, 129 Mo. App. 642.] The rule generally recognized elsewhere may be stated even more strongly than in the Cornwall Case, to the effect that after sentence has been pronounced, the court has no power to indefinitely stay the execution of same, either in whole or in part, and any order made to that effect is void. In Ex parte United States, 242 U. S. 27, Ann. Cas. 1917B, 355, L. R. A. 1917E, 1178, the accused entered a plea of guilty to a charge of embezzlement and was sentenced to five years imprisonment in the penitentiary, the minimum punishment which could have been imposed under the Federal statute for this crime. At once, upon

the request of the accused, the court directed the entry of an order that "the sentence be suspended during the good behavior of the defendant." The government moved to set this order aside, urging in support thereof that it was not a temporary suspension such as is recognized by the procedure to enable an appeal to be perfected, to apply for a pardon or for other relief against the sentence, but that it was a permanent suspension based upon considerations extraneous to the legality of the conviction and in excess of the power of the trial court in enforcing the sentence and was void and equivalent to a refusal to carry out the statute. This motion was overruled, whereupon a writ of mandamus was sued out in the United States Supreme Court directed to the district judge who made the order of suspension. Upon the granting of the writ and the vacating of the order of suspension, the district court was held to have exceeded its power. The Supreme Court, speaking through the late Chief Justice WHITE, said: "If it be that the plain legislative command fixing a specific punishment for crime is subject to be permanently set aside by an implied judicial power upon considerations extraneous to the legality of the conviction, it would seem necessarily to follow that there could be likewise implied a discretionary authority to permanently refuse to try a criminal charge because of the conclusion that a particular act made criminal by law ought not to be treated as criminal. And thus it would come to pass that the possession by the judicial department of power to permanently refuse to enforce a law would result in the destruction of the conceded powers of the other departments and leave no law to be enforced."

In People v. Boehm, 176 App. Div. (N. Y.) 401, 163 N. Y. Supp. 22, an order indefinitely suspending the execution of a sentence after it had been pronounced was revoked and the execution of the sentence ordered.

In People ex rel. v. Seeger, 179 App. Div. 792, 166 N. Y. Supp. 913, the power to suspend the execution of

the sentence of one convicted of a criminal offense was held unauthorized and an order entered vacating the suspension of the sentence was affirmed.

In People v. Shattuck, 274 Ill. 491, the Supreme Court of Illinois held that an indefinite suspension of the execution of a sentence for a term of six years was unauthorized.

In Cook v. Jenkins, 146 Ga. 704, it was held that a court had no power to suspend the execution of a sentence imposed in a criminal case except to incidentally review the judgment under which the sentence was imposed.

In a late Indiana case, Hunt v. State, 186 Ind. 644, 117 N. E. 856, it was held that where a defendant has obtained a suspension of the execution of a sentence of imprisonment during good behavior he cannot be heard to object to an order enforcing punishment, although made after the time fixed had expired.

Where an unauthorized stay of execution has been made it is immaterial so far as the rights of the State are concerned whether the defendant has consented thereto or not. The conduct of the petitioner in the instant case is such as to authorize the presumption, however, that he consented to the attempted stay. This presumption may properly be indulged where the court's action, although a nullity, embraced no act prejudicial to the petitioner. [St. Hilaire, Pet., 101 Me. 522, 8 Ann. Cas. 385.]

Numerous cases sustaining the rule as above announced are cited and discussed in 16 C. J. p. 1333, sec. 3139, and notes.

The reason for the rule is found in the nature of our systems of government, national and state. The power to grant reprieves and pardons and that to sentence for crime being distinct and different in their origin and nature, their exercise has been kept separate and distinct, the one having been confided to the executive and the other to the judicial department. The recognition

of the power of a court to suspend a sentence indefinitely or to stay its execution would be to allow the judicial department to usurp the power and exercise one of the functions of the executive department. This is upon the well grounded theory that a court's power in the administration of the criminal law, is limited, upon the conviction of the accused, to the imposition of the sentence authorized to be imposed. [8 R. C. L. p. 248, sec. 252 et seq., and cases.]

V. The suspension being void, to what extent does this affect the remainder of the judgment?

We have adverted to the authorized portions of the judgment and have cited the Knaup and Bockstruck cases, supra, as sustaining the conclusion as to their validity. These cases it is true involved convictions for misdemeanors but the rule there announced as to the validity of certain parts of the judgments and the invalidity of others is general in its application, applying as well to one class of cases as to another. The presence of certain well recognized requisites is necessary to the validity of a judgment, viz.: jurisdiction as to subject-matter and persons and an adjudication limited to the issues. Within this appointed sphere a court may act in the rendition of a judgment and if its action, by its terms, is separable from unauthorized acts, the invalidity of the latter will not affect the former. Applying this test to the case at bar we find the presence of all of the requisites to a judgment of conviction for a felony. The portion incorporated therein in which it was attempted to suspend the execution, being separable from the authorized judgment and an empty nullity, will not affect the validity of the latter.

**Remainder of Judgment.**

VI. The rule announced in the Cornwall Case, 223 Mo. 259, is invoked by the petitioner as an authority to sustain his discharge. The facts in that case are dissimilar from those at bar and the rule as applied to

them does not incorrectly declare the law.  In that case the defendant entered a plea of guilty and was **The Cornwall Case.** sentenced to imprisonment in the county jail for keeping a disorderly house.  To this judgment there was attached a condition that a stay of execution was granted upon the defendant's removal from her then place of abode and that she would not again violate the law as then charged. She paid the costs of this proceeding and complied with the conditions as to removal.  At a subsequent term the prosecuting attorney suggested to the court that she was again keeping a disorderly house, and the court thereupon entered an order of record to the effect that she was again violating the law and she was committed to jail.  She thereupon sued out a writ of *habeas corpus* in the circuit court and upon a hearing of same the court set aside the jail sentence imposed at the former term, assessed a fine against the defendant of two hundred dollars and ordered her into the custody of the jailer until the same was paid.  She refused to pay the fine and was committed to jail.  Thereupon she again petitioned the circuit court for a writ of *habeas corpus* to effect her release.  This was denied.  She then applied for a similar writ to one of the judges of the Supreme Court which was granted and a hearing had thereon.  In ordering her discharge this court held that the judgment of imprisonment entered on her plea of guilty to the statute which limited her punishment to a fine was invalid and that the attempt to modify or correct the same at a subsequent term by assessing a fine against the prisoner was unauthorized.  The correctness of this ruling does not admit of controversy.  It will be seen that it is the invalidity of the judgment of imprisonment which forms the substantial basis of the court's ruling. By its action the circuit court attempted to re-assume jurisdiction it had lost in the case upon the rendition of the former judgment.  No citation of the rulings of procedure or a discussion of cases is necessary to demonstrate the lack of legal authority for such a pro-

300 Mo.—43

ceeding. The legality or illegality of the original judg-
ment was not material, as the defendant was held under
an unauthorized subsequent judgment, and from this
duress she sought release.

An altogether different state of facts characterizes
the case at bar. The judgment therein was valid. The
re-sentence was upon this judgment, and it is conceded
and the record shows that it simply reiterates the find-
ings of the former. It is difficult therefore to determine
upon what theory the Cornwall Case can be said to sup-
port the petitioner's contention in the case at bar.

VII. The illustrations employed in the opinion in
the Cornwall Case as auxiliary reasons for the court's
ruling are, to say the least, not happily chosen and the
cases cited are not apposite. It is said in effect in the
opinion (p. 272) that the part performance of an erro-
ous judgment will not authorize the court, at a sub-
sequent term, to revise it and substitute there-
for a new judgment. This fact is not to be
gainsaid, but it is not the compliance with
conditions in the judgment or their noncom-
pliance by the prisoner that limits or controls the court's
action, but a lack of jurisdiction which, having been ex-
hausted by the entry of a final judgment, cannot be renew-
ed for any purpose which will modify or change the origi-
nal sentence. The rule, with a limitation, is so stated in 12
Cyc. Law & Proc. 784, and is cited in the Cornwall
Case. The limitation is to this effect that: "Changes
in the sentence which do not alter the punishment but
only changed the time or place of its infliction may be
made at a subsequent term." The rule as thus limited
has been approved by the Supreme Courts of North
Carolina and Wyoming. [State v. Cardwell, 95 N. C. 643;
Kingen v. Kelley, 3 Wyo. 566, 15 L. R. A. 177.] Al-
though the provisions are salutary, neither by statute
or judicial utterance has it been expressly recognized
here; in our view of the instant case, however, it is un-
necessary to the determination of the matter at issue.

Changes in Sentence.

We cite it simply as not unqualifiedly sustaining the rule as announced in the Cornwall Case.

Nor do the facts in Ex parte Lange, 18 Wall. 163, authorize its citation in support of the ruling in the Cornwall Case. In the Lange Case the offense with which the prisoner was charged, the unlawful appropriation of mail bags, was punishable by a fine or imprisonment. Upon a trial in a U. S. District Court and a verdict of guilty, the defendant was sentenced to one year's imprisonment and to pay a fine of $200. He paid the fine and was committed to jail in execution of the sentence of imprisonment. The day succeeding his sentence and at the same term he was brought before the trial court on a writ of *habeas corpus* and an order was entered vacating the former judgment and sentencing him to one year's imprisonment from that date in the county jail. Upon his application for a second writ of *habeas corpus* in the trial court, two district judges sat with the trial judge at the hearing and the prisoner was remanded. A petition for a writ of *habeas corpus* was then filed in the United States Supreme Court, which upon a hearing held in effect that the judgment of conviction, while erroneous, was not void; that it was rendered by a court which had jurisdiction of the person and the offense and upon a valid verdict of guilty. The error of the trial court in imposing two punishments when it only had the alternative of one did not render the judgment wholly void When a prisoner, as in this case, by reason of a valid judgment has fully suffered one of the alternative punishments to which the law alone subjected him, the power of the court to punish further is exhausted, and he cannot again be punished for that offense. The record of the court's proceedings at the moment when the second sentence was rendered showed that in that very case for that very offense the prisoner had fully performed, completed and endured one of the alternative punishments which the law prescribed for that offense, and had suffered five days' imprisonment on account of the other. It (the record) thus showed the

court that its power to punish for that offense was at an end. Justice MILLER in summing up the court's conclusion in this case says: "Unless the whole doctrine of our system of jurisprudence, both of the Constitution and the common law, for the protection of personal rights in that regard, are a nullity, the authority of the court to punish the prisoner was gone. The power was exhausted; its further exercise was prohibited. It was error, but it was error because the power to render any further judgment did not exist. It is no answer to this to say that the court had jurisdiction of the person of the prisoner, and of the offense under the statute. It by no means follows that these two facts make valid, however erroneous it may be, any judgment the court may render in such case."

The following rule may with propriety be deduced from the court's reasoning in the Lange Case: where a court has full jurisdiction to render one kind of a judgment operative upon a particular person or subject and it renders one it has a right to render and something more, the excessive exercise of power is simply void. The distinctive difference between the Lange and the Cornwall Case is apparent. In the former it was attempted by indirection to punish the prisoner twice for the same offense; in the latter, to correct an invalid sentence of imprisonment which should have, under the statute, been limited to a fine. A discussion of the character of the former judgment in each of these cases is unnecessary, except to demonstrate the validity of the one, and the invalidity of the other, and this only for the purpose of demonstrating the court's lack of power to render the sentence under which the prisoner in each case was held. With the showing therefore as to the court's lack of jurisdiction in the judgments under consideration, their similarity ends; and the citation of the ruling of one to sustain the conclusion reached in the other is not, under the facts in each, a matter readily to be determined. But it is contended that the similitude of these cases con-

sists in the fact that in each an erroneous sentence which had been partly executed did not authorize the court to revise the judgment entered and impose a new sentence, even at the same term. This general statement, the correctness of which when properly applied we do not question, when attempted to be applied to the case at bar should be read in the light of the facts in each of the cases cited. In the Lange Case the compliance referred to was as to the valid portion of the judgement. In the Cornwall Case to the attempted correction of an invalid judgment. The valid portion of the judgment in the Lange Case being separable, as the United States Court must have held, from the invalid portion, a compliance with the former could confer no power upon the court in regard to the latter. The re-sentence in the Cornwall Case, as we have shown, being wholly void, a compliance with all or any part of same did not authorize the court to enter the same after its entire power had been exhausted. The power of the courts therefore in these cases being forspent there was nothing left to be revised, modified or restored and *Ex nihilo nihil fit* finds appropriate application.

A different state of facts confronts us in the instant case. The validity of the judgment is conceded. It has not been satisfied. Its correctness as set forth in the return is not open to question. There has been no effort to in any wise change it. The re-sentence which it is contended constitutes another and a subsequent judgment is but a literal rescript of the original; and cannot be seriously urged as a ground for the prisoner's discharge. Whatever view may be taken of the effect of a part compliance with a judgment in a criminal case at variance with our conclusion herein, it can have no application here. The condition as to the punishment by imprisonment was a nullity, and there was no legal obligation thereby imposed on the prisoner to comply with the unauthorized condition incorporated therein. If he did so it could not affect the right of the State to inflict upon him the authorized portion of the judgment.

That the State has broken faith with the prisoner in permitting him, to escape punishment on compliance with the condition will not stand the test of analysis. Broken faith implies the pre-existence of an obligation. An obligation cannot be created by an unauthorized judicial act.

In view of all of which the prisoner should be remanded and it is so ordered. *Woodson, C. J.,* and *Ragland* and *David E. Blair, JJ.,* concur; *James T. Blair, J.,* concurs in the result; *White, J.,* not sitting; *Graves, J.,* stands on his opinion now on file.

ADDENDA BY WALKER, J.—After the foregoing opinion was prepared the Warden of the Penitentiary requested and was granted leave to file an amended return. This he has done, setting up the fact that he holds the petitioner under a commitment issued upon the original judgment rendered against the latter. To the action of the court in granting permission . to file the amended return, *Graves, J.,* dissented in a separate opinion.

GRAVES, J. (dissenting).—In this cause there was, on August 9th, filed an application for leave to file an amended return by the Warden of the Penitentiary. This was through the Attorney-General. By order entered of record on August 14, 1923, the prayer of the foregoing and mentioned application was granted and leave given to file such amended return. To this action of the court in granting such leave and making the order therefor, I dissented and took leave to file an opinion giving the reasons for such dissent. In pursuance of such leave to file opinion I am now assigning my reasons for my dissent.

Further facts of record should be stated. Petitioner, on July 23, 1923, filed his petition and application for a writ of *habeas corpus.* July 26, 1923, a date for a hearing of the cause was fixed, and July 31st was the date fixed for such hearing. On July 31st said cause was heard, argued and submitted for opinion. When the or-

*Ex Parte Thornberry.*

der granting leave to file an amended return and thus change the issues theretofore made there were in fact two prepared opinions in the case. One opinion remanding the prisoner, and the other dissenting from such opinion.

I dissent because:

1. No notice to petitioner or his counsel was given of such application for leave to file an amended return.

2. The amended return, tendered with the application for leave to file, charges the issues in the case, and this after the issues had been made and the cause submitted.

3. No order allowing the change of issues can or should be made after a cause has been heard and submitted.

4. The order of submission (upon full issues theretofore made by the pleadings) stands now in full force and until such order of submission is set aside, no change in the issues in the case can be made.

5. If it be said that the order allowing a change of the issues amounts to a setting aside of the submission, then in such case the cause stands here for a hearing and a new submission, and stands as if no hearing and submission had ever been heretofore had.

6. It is a dangerous practice to allow changes in issues after a submission of a cause, if in fact it can be done at all. In our judgment when once the issues are closed and the cause submitted, no change of the pleadings and issues can be made. If they can, then every time a lawyer discovers some oversight (after submission of his cause) he can ask to change his pleadings to cure this oversight. Of course we are speaking of original proceedings here.

I shall not elaborate upon the foregoing reasons. They speak for themselves. I therefore dissent to the order granting leave to file the amended return.