STATE OF MISSOURI, RESPONDENT, v. JOE HATTON, APPELLANT.—228 S. W. 2d 10.

Kansas City Court of Appeals. Opinion delivered March 6, 1950.

*Don C. Carter* for appellant.

1246

*Carl F. Sapp* for respondent.

BROADDUS, J.—This prosecution, begun in the Magistrate Court at Columbia, Missouri, was based upon the following information, omitting caption and signature:

"Comes now Howard B. Lang, Jr., Prosecuting Attorney within and for the County of Boone and State of Missouri, and upon his official oath informs the Court that Joe Hatton on or about the 31st day of January, 1948, at and in the County of Boone and State of Missouri, did wilfully and maliciously maim, wound and torture two dumb animals, to wit: two black and tan coon hounds, said hound dogs being the property of Estell P. Strawn, by then and there castrating said dogs; against the peace and dignity of the state.''

Defendant was tried before a jury in the magistrate court, convicted, and his punishment assessed at a fine of $50. From this sentence he appealed to the Circuit Court. There he was tried before a jury, resulting in a verdict finding him guilty and fixing his punishment at a fine of $50 and three months in the County Jail, being the maximum punishment under the statute. In due time defendant filed his motion for a new trial, which was overruled, and he has perfected his appeal to this court.

The evidence on the part of the State was wholly circumstantial, and, briefly, tended to show the following: Estell Strawn, a young farmer, living about 2 miles north of Columbia, in Boone County, Missouri, owned two black and tan coon hounds, 22 months old, both males, named Lead and Rowdy. On the morning of January 31, 1948, Strawn left his home about six o'clock to go to his work at Stephens College, in Columbia, and just before he left, turned the two dogs loose, as they had not been loose for some time. He returned to his home about noon, and found both dogs bleeding, whimpering and licking themselves, and he discovered that both had been castrated. Snow had fallen during the night, ceasing about 8:30 or 9:00 o'clock that morning, leaving four or five inches on the ground. There were lots of bloody tracks in the snow, and Strawn began to track the dogs in a northwesterly direction from his home, across his pasture, but decided it would be best to take his dogs to a veterinarian, as they might bleed to death. He took one of the dogs to Dr. Carl Hulen, a veterinarian in Columbia, and a couple of days later took the other dog to Dr. Hulen, who treated them. Strawn took the first dog home and immediately resumed the tracking of the dogs in the snow. After going about a mile from his home he came upon his wife and two boys, Jim Sevier and Harold Wescott. The Sevier boy left at this point, and Strawn, his wife and the Wescott boy continued in a northwesterly direction. The tracks of the dogs came almost in a straight direction from the Hatton (defendant) farm. They followed the bloody tracks into the defendant's front yard, where there was a large area patted down with dog tracks and human tracks in the corner of the fence, and leading from there were the tracks of a man through the snow, coming from the porch of the house to the trampled down area, a distance of

about 50 or 60 feet. Strawn said there were dog tracks leading up to the spot where the snow was trampled down, but there were no bloody tracks of the dogs until they left the trampled spot. He went up to defendant's front door and "hollered, 'Joe' ". Defendant answered and came out on the porch. Strawn inquired if he had seen a couple of black and tan coon hounds, and defendant said, "No—I have been here all day, and I haven't seen them." Strawn then said: "They have been here Joe—I have tracked them here and they were bleeding." Defendant said, "I haven't seen them. Cleo has an old three-legged dog up here and maybe he made it," and Strawn said: "No, these were my dogs." Hatton (defendant) then went back in the house and Strawn went around the house. Hatton did not come out of the house. Strawn then went back of the house, got over the fence, circled the yard and found another set of bloody dog tracks which started between Hatton's cellar house and the dog house, almost back of Hatton's back door. Strawn followed these tracks past the barn, where it appeared the dog had stopped and bled more. Strawn testified that the tracks of the dogs had not been difficult to follow from his home to that of defendant's, a distance of about three and one-half miles; that he saw the tracks where the dogs had entered defendant's yard, and said: "The tracks that came into the yard didn't have any blood in them"; that there were no other tracks except those made by his dogs, coming from any direction to defendant's home. Strawn then went to the home of Cleo Brown and saw his (Cleo's) three-legged dog but it was not bleeding.

The testimony of Mrs. Strawn was almost identical with that of her husband. The testimony of three other witnesses tended to corroborate that of the Strawns.

Dr. Hulen testified that when the two dogs were brought to his office he found that both had been castrated; that the operation appeared to have been made hastily, and that the dogs were very sore at the time they were brought to him, and had suffered much pain.

Defendant denied that he had committed the offense, or had any knowledge if it. The testimony of his housekeeper was to the same effect. Both said, however, that no one had been at defendant's home that day other than themselves, except Mr. and Mrs. Strawn and the Wescott boy. Defendant called to the stand several farmers who testified that it would be rather difficult for one man alone to castrate a dog or a shoat.

Appellant first contends that this court does not have jurisdiction over this case for the reason that he raised a constitutional question in his motion to quash the information on the ground that Sec. 4557 R. S. Mo. 1939, upon which this prosecution is based, is unconstitutional. This he did not do., In his motion he merely asserted that "if and when" said section is construed in a certain manner it

would render the same unconstitutional. In order to raise a question of whether a statute is constitutional or unconstitutional so as to give the Supreme Court jurisdiction of the case the contention must be that the act is unconstitutional whatever it means and under any construction of which it is susceptible. Moyer v. Orek Coal Co., 78 S. W. (2nd) 107, (Mo. Sup.) citing many cases. The challenge must be that the statute is "inherently and totally invalid." Hayes v. Hayes, 153 S. W. (2nd) 1. (Mo. Sup.) We have jurisdiction of the case, not the Supreme Court.

Appellant next asserts that the information filed herein does not state facts sufficient to constitute any offense against the laws of this state. He specifies this by saying that "the information charges two separate and distinct offenses, viz., (1) one for 'maiming and wounding' the two dogs in question; (2) the other for 'torturing' said dogs." Said Section 4557 is as follows:

"Every person who shall willfully and maliciously or cruelly kill, maim, wound, beat or torture any dumb animal, whether belonging to himself or another, shall upon conviction be punished by imprisonment in the county jail for not more than three months, or by a fine of $50.00 or by both such fine and imprisonment: *Provided*, that nothing herein contained shall be construed to prohibit or interfere with any scientific experiment or investigations: *Provided further*, that nothing in this section shall apply to the hunting or trapping of wild animals."

In State v. Prater, 130 Mo. App. 348, upon which appellant relies, it was held that the statute creates two offenses, in one of which the essential element is the "wilful and malicious" maiming, wounding, etc., and in the other "cruel" maiming, etc. In the case at bar appellant was charged with "wilfully and maliciously" maiming, wounding and torturing the two dumb animals and not with "cruel" maiming, etc. Under the holding in the Prater case only one offense was charged in this information. Sec. 4557, supra, is worded in the disjunctive insofar as the use of the two words "beat" or "torture" is concerned. However, the words "beat or torture" are used in the conjunctive with "kill", "maim" and "wound". If the disjunctive use of the words makes "torture" a separate offense from "beat", it is still conjunctive with "kill," "maim", and "wound." Therefore, to allege, as was done here, that appellant "did wilfully and maliciously maim, wound, and torture" charged but one offense.

Appellant next claims that the evidence was not sufficient to support the verdict. We have heretofore set out the evidence somewhat in detail and it is not necessary for us to repeat it here. While the evidence was entirely circumstantial, in our opinion, it amply sustains the verdict.

Complaint is also made by appellant that Instruction "A", given on the part of the State, submits to the jury two separate and

distinct offenses, viz: One for maiming and wounding the two dogs in question, and one for torturing said dogs. We have heretofore held that the information does not allege two distinct offenses. For the same reason this instruction does not submit two separate offenses. Appellant also says that this instruction assumes that said dogs were maimed, wounded and tortured by reason of being castrated and is therefore erroneous. On the contrary, it requires a specific finding to that effect by the jury.

Appellant next says that Instruction "C", given on behalf of the State, is erroneous in that, while it is the usual instruction given in criminal cases defining the term "malice", Sec. 4559 R. S. Mo. 1939, defines that term as used in a prosecution under Sec. 4557 as being an act "wrongfully, intentionally and wilfully done." Sec. 4559, supra, provides that it shall not be necessary to show at the trial of any offense, as here charged, that the offense was committed from malice conceived against the owner or animal, but if the act was wrongfully, intentionally and wilfully done, it may be inferred that it was done maliciously. In the Prater case, supra, the court in discussing these statutes said: "As the statutes eliminate malice against the owner and against the animal, no other species can enter into the act except the general malice which pervades all crimes but a few statutory offenses, like illegal sales of intoxicants, and which is defined as the 'intentional doing of a wrongful act without just cause or excuse.' " Thus it was proper to give the term "malice" its usual definition.

Appellant also asserts that Instruction "B", given on the part of the State, is erroneous. It relates to circumstantial evidence, and an instruction exactly like it met with the approval of the Supreme Court in State v. Avery, 113 Mo. 475.

Appellant's last complaint relates to the remarks made by the prosecuting attorney in his closing argument to the jury. These amounted to no more than reasonable inferences which could be drawn from the testimony. It is well settled that the prosecutor has a right to draw any inference from the evidence which he, in good faith, thinks justifiable. State v. Murray, 292 S. W. 434, (Mo. App.)

A careful examination of the record has disclosed no error and the case should be affirmed. It is so ordered. All concur.