STATE of Missouri, Plaintiff-Respondent,

v.

John Patrick MOTLEY,
Defendant-Appellant.

No. 37211.

Missouri Court of Appeals,
St. Louis District,
Division One.

Dec. 7, 1976.

Motion for Rehearing or Transfer
Denied Feb. 16, 1977.

Newmark & Baris, Irl B. Baris, Kenneth H. Graeber, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Jefferson City, Robert M. Sommers, Asst. Attys. Gen., Brendan Ryan, Circuit Atty., St. Louis, for plaintiff-respondent.

RENDLEN, Judge.

John Patrick Motley appeals his conviction on two counts for illegal sale of marijuana, a Schedule I Controlled Substance, under § 195.200 RSMo.1969, V.A.M.S.[1] Having a prior controlled substance felony conviction, Motley received the minimum mandatory sentences provided in § 195.200, subsection 1(5), on each count, the sentences to run concurrently.

Defendant concedes the sufficiency of the evidence but challenges the constitutionality of pertinent portions of § 195.200.[2] We have examined this contention and as hereinafter discussed, conclude jurisdiction lies in this court under Article V, Section 3, Missouri Constitution, 1945, as amended. Defendant's specific allegations are: (1) the ten year minimum sentence provided by subdivision (5) of subsection 1, and subsection 4 prohibiting "parole, probation, suspended sentences or any other form of judicial clemency" usurp the judicial function in

violation of Article II, Section 1 and Article V, Section 1 of the Missouri Constitution; and (2) the ten year sentence is excessive and disproportionate, constituting cruel and unusual punishment contrary to the mandate of Article I, Section 21 of the Missouri Constitution and the Eighth Amendment of the United States Constitution made applicable to the States by the Fourteenth Amendment.

Defendant first contends a court has inherent power to grant or deny a convicted offender probation on consideration of mitigating circumstances, citing *State v. McCoy,* 94 Idaho 236, 486 P.2d 247 (1971), and to restrict this power by statute constitutes an impermissible legislative usurpation of the court's prerogatives. In ruling this point it is important we consider the concepts of punishment, sentencing and probation in the broad sense as they relate to the legislative and judicial function.

In Missouri, fixing punishment for a crime defined by statute is the province of the legislature not the courts. *State v. Alexander,* 315 Mo. 199, 285 S.W. 984, 985[5] (1926); *State v. Wheeler,* 318 Mo. 1173, 2 S.W.2d 777, 779[10] (1928); *see* cases cited, Missouri Digest under Constitutional Law, ☞70.1(10), pocket part 1976. The power to pardon is an executive power, Missouri Constitution, Article IV, Section 7.

The Missouri Supreme Court, discussing the concept of sentencing, has stated: "In its technical legal sense the sentence generally constitutes and has the same meaning as judgment or final judgment or determination against accused in a criminal case. . . . Broadly, the term [sentence], in legal parlance, may be said to denote the action of a court of criminal jurisdiction, formally declaring to accused the legal consequences of the guilt which he has confess-

---

1. Unless otherwise indicated, all statutory citations are to RSMo.1969, V.A.M.S.

2. Section 195.200, subsection 1, subdivision (5) provides imprisonment for a term of not less than ten years nor more than life imprisonment "for the offense of selling . . . any controlled substance listed in Schedule I or II [which include marijuana as well as listed opium derivatives] . . . if the offender has previously been convicted of any felony violation of the laws of this state . . . relating to controlled substances . . . ." Subsection 4 provides: "No parole, probation, suspended sentences or any other form of judicial clemency may be exercised in behalf of any person punished under subdivision . . . (5) of subsection 1."

ed or of which he has been convicted. . . [A] sentence is not, strictly speaking, the act of the court but the judgment of the law which the court is commanded to pronounce." *State v. Pruitt,* 169 S.W.2d 399, 400[1] (Mo.1943); *see also McCulley v. State,* 486 S.W.2d 419, 423[4] (Mo.1972). The court in *Ex parte Thornberry,* 300 Mo. 661, 254 S.W. 1087, 1091[11] (en banc 1923), examining the court's role in the sentencing process stated: "[A] court's powers in the administration of the criminal law is limited, upon the conviction of the accused, to the imposition of the sentence authorized to be imposed."

■ As to the authority of a court to suspend sentence in the absence of an express statutory provision, it has been declared the trial court has no power to indefinitely suspend the sentence, for whatever reasons.[3] *Ex parte Bugg,* 163 Mo.App. 44, 145 S.W. 831, 832[1] (1912); *Ex parte Thornberry, supra,* at 1090[8].

■ Trial courts are authorized in certain cases to suspend the imposition of sentence, or to parole or place defendants on probation, *see* § 549.061 RSMo., as amended Laws 1975, and § 549.071 RSMo., as amended Laws 1967, V.A.M.S., but this stems from statutory authorization and is not inherent to the judicial power. *Cf. State ex rel. Douglas v. Buder,* 485 S.W.2d 609, 610[1] (Mo. banc 1972) rev'd on other grounds 412 U.S. 430, 93 S.Ct. 2199, 37 L.Ed.2d 52 (1973); *Weber v. Mosley,* 241 Mo.App. 727, 242 S.W.2d 273, 279[9, 10] (1951). An example of statutory proscription imposed by the legislature on the sentencing process appeared in § 556.280 RSMo.1949, the "second offender" act.[4] Discussing the statute's effect in the case of a defendant tried for first degree robbery as an habitual criminal, the court in *State v. Hurtt,* 509 S.W.2d 14, 18[6] (Mo.1974), stat-

ed: ". . . upon the jury's finding that appellant had one prior conviction, [the court] had absolutely no discretion in sentencing appellant, but was required to impose a sentence of life imprisonment." In *Ex parte United States,* 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916), these principles have been analyzed by the Supreme Court in terms of traditional concepts of separation of powers. There an accused entered a plea of guilty to a charge of embezzlement and was sentenced to five years imprisonment, the minimum mandatory punishment under the federal statute for that crime. The trial court mistakenly ordered that the sentence be suspended during the good behavior of the defendant. The Supreme Court by mandamus compelled vacation of that order as an excess of judicial authority, holding that such action by the trial court was a usurpation of the legislative power and if permitted "it would come to pass that the possession by the judicial department of power to permanently refuse to enforce a law would result in the destruction of the conceded powers of the other departments, and hence leave no law to be enforced." 242 U.S. at 42, 37 S.Ct. at 74. Our Supreme Court in *Ex parte Thornberry, supra* at 1090–91[11], favorably citing that decision, stated:

> The reason for the rule is found in the nature of our systems of government, national and state. The power to grant reprieves and pardons and that to sentence for crime being distinct and different in their origin and nature, their exercise has been kept separate and distinct, the one having been confided to the executive and the other to the judicial department. The recognition of the power of a court to suspend a sentence indefinitely or to stay its execution would be to allow the judicial department to usurp the pow-

---

**3.** This is not to say the court does not have *any* power to exercise its discretion in the matter of suspending sentence. It is clear that a court has inherent power to exercise its discretion in suspending a sentence a reasonable time for a proper purpose and this purpose is usually construed under Missouri practice, in the absence of any statute on the subject, "to granting time to file a motion for a new trial or in arrest of judgment, to secure bail, or to perfect or pending an appeal." *Ex parte Thornberry, supra* at 1090[7].

**4.** Certain portions of the statute have since been changed. *See* § 556.280 RSMo., as amended Laws 1959, V.A.M.S.

er and exercise one of the functions of the executive department. This is upon the well-grounded theory that a court's powers in the administration of the criminal law is limited, upon the conviction of the accused, to the imposition of the sentence *authorized to be imposed.*

Thus, the legislature by statutory enactment describes crimes and prescribes punishment and for a court to refuse imposition of prescribed penalties by the device of indefinite suspension of sentence or similar means, would constitute judicial usurpation of legislative power. It is clear that contrary to defendant's contention there has been no usurpation of judicial authority here; indeed the opposite would occur if a court on conviction refused imposition or ordered indefinite suspension of sentence. Plaintiff's Point I is without merit.

■ Defendant next contends the ten year concurrent sentences imposed by § 195.200 are so excessive and disproportionate to the offenses charged as to constitute cruel and unusual punishment violative of Article I, Section 21, Missouri Constitution and the Eighth and Fourteenth Amendments to the United States Constitution. As previously discussed, establishing the range of punishment for crimes is a legislative, not a judicial function, *State v. Alexander,* 315 Mo. 199, 285 S.W. 984 (1926), and a sentence when imposed within the limits provided by an otherwise constitutional statute, is not to be considered excessive. *State v. Alexander, supra* at 985[4]; *State v. Grimm,* 461 S.W.2d 746, 754[7] (Mo. 1971). Stated somewhat differently, " 'The definition and punishment of crime in general is a legislative function upon which the courts may not encroach' . . . and so long as constitutional limitations are not infringed, the will of the legislature in this respect is absolute." *State v. Stock,* 463 S.W.2d 889, 895[8] (Mo.1971).

The Missouri Supreme Court in *Stock, supra,* and in *State v. Burrow,* 514 S.W.2d 585 (Mo.1974), considered contentions that the statutory inclusion of marijuana in the same schedule as narcotics, thereby subjecting one convicted for the sale of marijuana

to penalties as harsh as those imposed for the sale of narcotics under § 195.200, is a violation of the due process and equal protection provisions of the Missouri and United States Constitutions. The court rejected these arguments for the reason that lack of rational basis for the classification had not been demonstrated. *State v. Burrow, supra* at 589–93; *State v. Stock, supra* at 895[7, 8].  Further the court in *Stock* stated: "All who sell marijuana are subject to the same punishment, and the legislature can, if it deems it advisable to control the unlawful traffic in marijuana, classify marijuana as it has done so." *See also State v. Golightly,* 495 S.W.2d 746, 753[4–6] (Mo.App.1973), holding that sellers of marijuana may be punished with the same severity as sellers of heroin, cocaine, etc.

■ Defendant's present contention that the sentence provided here by § 195.200 constitutes cruel and unusual punishment must be examined against the established standards of constitutional construction declared by our Supreme Court. A punishment is not cruel and unusual because of its duration "unless [it is] so disproportionate to the offense committed as to shock the moral sense of all reasonable men as to what is right and proper under the circumstances." *State v. Brownridge,* 353 S.W.2d 715, 718 (Mo.1962); *State v. Agee,* 474 S.W.2d 817, 821–2[14] (Mo.1971). Because the classification of marijuana with the narcotics and hard drugs has been declared constitutionally valid, *State v. Stock, supra,* and *State v. Burrow, supra,* defendant's argument carried to its logical end would require a finding here that the ten year sentence imposed by § 195.200, subsection 1(5) for the sale of *all* Schedule I and Schedule II controlled substances to be "so disproportionate . . . as to shock the moral sense of all reasonable men." This we are unable to do; and accordingly, the concurrent ten year sentences here imposed withstand the charge of constitutional infirmity. See *State v. Vermillion,* 486 S.W.2d 437, 441[9] (Mo.1972).

■ Having found that the case involves application of established constitutional

principles and not the construction of either the state or federal constitution, jurisdiction of the appeal is in this court and not the Missouri Supreme Court as the parties have suggested. *See City of Florissant v. Rouillard,* 495 S.W.2d 418, 420[3] (Mo.1973).

The judgment is affirmed.

WEIER, P. J., concurs.

McMILLIAN, J., dissents in a separate opinion.

McMILLIAN, Judge, dissenting.

I dissent from the majority opinion because I believe that statutorily mandated sentences to the extent that they deny the court the right to exercise its discretion to suspend either the imposition or execution of a sentence constitutes an intolerable usurpation of an inherent power of the court to grant probation.

My initial disagreement with the majority opinion was on the issue of jurisdiction. The case should be within the exclusive appellate jurisdiction of the Missouri Supreme Court as one involving the "construction of the Constitution of the United States or of this state," Mo.Const. Art. V, § 3. As reflected by the majority opinion, the precise constitutional question involved has not been previously resolved in Missouri. In addition, as discussed below, I feel that the issue involved here is not one to be resolved by application of the well-established principle that the legislature fixes the limits of punishment. Appellant's attack on the statute is that it is unconstitutional under any interpretation rather than that a particular interpretation of the statute might render it unconstitutional. An attack framed in this fashion requires a decision by the State Supreme Court, *Rose v. State Board of Registration for Healing Arts,* 397 S.W.2d 570, 571 (Mo.1965); *State v. Brookshire,* 325 S.W.2d 497, 501 (Mo. 1959); *Cotton v. Iowa Mut. Liability Ins. Co.,* 363 Mo. 400, 251 S.W.2d 246, 250 (1952); *State v. Hatton,* 240 Mo.App. 1244, 228 S.W.2d 10, 12 (1950). I, therefore, agree with the statements in the briefs of both appellant and respondent that jurisdiction in this case should be vested in the Supreme Court rather than this court.

Because the majority opinion considers the merits of appellant's attack on the statute, my dissent on the substantive issues involved is necessary.

The constitutionality of mandatory sentences excluding the possibility of probation has not been decided in Missouri. The decisions in *Ex Parte United States,* 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916) and *Ex Parte Thornberry,* 300 Mo. 661, 254 S.W. 1087 (banc 1923), relied upon by the majority, dealt with the power of a court to indefinitely suspend the execution of sentence. In *Ex Parte United States,* the sentence was suspended during the good behavior of the defendant. In *Ex Parte Thornberry,* the trial court advised defendant that he could avoid punishment if he left the area immediately. The asserted powers in those cases to indefinitely suspend the execution of sentence seems quite different from the action of a trial court in utilizing probation on definite terms for a definite period as part of the sentence imposed in appropriate circumstances. To indefinitely suspend a sentence is a repudiation of the authority of the legislature to define crimes. To grant probation is to apply the legislature's policy choice to punish a particular type of conduct but to do so in the manner most conducive to justice in the specific circumstances. The majority's analogy of the mandatory sentence statute to the Second Offender Act is also not persuasive since judicial parole is not precluded by that statute, *Crow v. State,* 492 S.W.2d 40, 46–7 (Mo.App.1973). Finally, the majority's statement of the general rule that it is a legislative function to define the parameters of punishment for a crime does not clearly foreclose the issue of a court's responsibility to individualize that punishment within those parameters.

The Missouri Constitution guarantees the division of both the specifically enumerated and inherent powers of government into three distinct branches, Art. II, § 1. Compliance with this constitutional provision requires that the judiciary not encroach on

the functions of the legislative or executive branches. The corollary of that principle, that the judiciary must guard against encroachment on its own power, has, however, all too often been overlooked because of the conservatism of the state's judiciary. The majority opinion represents but one further example of this attitude.

Even though mandatory sentences are intended to emphasize the harshly deterrent aspects of punishment rather than the rehabilitative, it seems that some flexibility must be retained in the system. A legal system that cannot react at all to the wide range of circumstances surrounding a particular defendant's involvement with drugs must engender disrespect. Widespread disrespect for the drug laws has been noted as a principal problem in the enforcement of such laws, Eisberg, "Missouri Needs Marijuana Reform," 32 Jrnl.Mo.Bar 168, 173 (1976). A sentencing system precluding judicial discretion can also become self-defeating.

There are several additional reasons why the mandatory minimum is a naive and destructive provision. As noted, the definition of offenses if of necessity in general terms, and the varying circumstances in which an offense can occur will to a certainty lead to cases where all would agree that a long period of confinement is unwarranted. Both judges and prosecuting officials recognize such cases when they arise, and are immediately put in a most awkward position. They may either enforce the letter of the law and perpetrate a clear injustice, or they may ignore the law and defeat the apparent intent of the legislature. Both results are destructive of the very public confidence in the system which is sought by the mandatory minimum term.

The process or nullification which comes about by judicial *nonenforcement* of mandatory provisions also illustrates another point which is often ignored in the heat of the moment which produces such legislation. It is frequently stated by the proponents of mandatory minima that such devices are needed to prevent "soft" judges from being lenient toward dangerous offenders and to provide a sureness of punishment that will act as the great deterrent. But the fact remains—whether the judge is right or whether he is wrong—that the judge has numerous discretionary means by which he can, and by which judges do, defeat the intent of such legislation. The intention to hamstring "soft" judges thus may boomerang to result in more lenient treatment—perhaps even acquittal—than even the judges themselves would desire. The search for an alternative to the offense which carries the harsh minimum may not always produce an offense which provides an appropriate disposition. The effect on the system, in any event, is that it becomes unmistakably truncated and artificial. ABA Standards, Sentencing Alternatives and Procedures, § 3.2(b), Comments, pp. 149–50 (1968). Juries, of course, might adopt a similar attitude of nullification as a response to the harsh nature of the sentencing system. The end result is that the statute rather than eliminating discretionary elements simply shifts the exercise of discretion to points in the judicial system where the activities of the prosecutor, judge and jury cannot be effectively monitored.

Another curious feature of this mandatory sentence statute is the fact that it only precludes judicial clemency. A defendant can still receive an executive pardon or be paroled by the Board of Probation and Parole on the very first day of his sentence. The statute can thus only be read as a direct insult to the competency of trial judges.

It is the recognition of such difficulties and inconsistencies that has prompted repeated criticism and rejection of mandatory sentence provisions, see ABA Standards, Sentencing Alternatives and Procedures, § 2.3(a) (1968), Model Penal Code, § 6.02 (1962), Missouri Proposed Criminal Code, § 2.010 (1973).

The United States Supreme Court recently expressed its disapproval of mandatory sentence statutes in *Woodson v. North Carolina*, 428 U.S. 280, 303, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976).

The flexibility recognized as essential to any rational sentencing system seems best administered by the judiciary because it is that branch that has first-hand knowledge of the particular circumstances of a specific case. The inherent powers of the judiciary have been defined in a functionally-oriented manner in past Missouri cases, see e. g., *State v. Becker,* 351 Mo. 769, 174 S.W.2d 181, 183 (1943); *Clark v. Austin,* 340 Mo. 467, 101 S.W.2d 977, 981 (1937). Such a pragmatic approach to the division of governmental powers should continue and should lead to the characterization of the granting of probation as an inherent power of the judiciary. Once it is determined that the facts of the case dictate incarceration the mandatory sentence statute may become applicable but an initial determination of the appropriateness of incarceration must be required. In conclusion, I share the view of the Supreme Court of Idaho as expressed in *State v. McCoy,* 94 Idaho 236, 486 P.2d 247 (1971), a case holding mandatory sentences unconstitutional as a usurpation of judicial power:

> "Our system of laws, indeed, hopefully our civilization, has undergone a persevering evolution toward enlightenment. A judge is more than just a finder of fact or an executioner of the inexorable rule of law. Ideally, he is also the keeper of the conscience of the law." (*Id.* at 251)

I must also express my fervent disagreement with the result reached by the majority on the issue of cruel and unusual punishment. A sentence of ten years imprisonment for the second sale of a small quantity of marijuana is incredibly disproportionate to the conduct for which it is being punished. As noted by the appellant in his brief, for example, many violent crimes are punished much less severely in Missouri, see also H. Eisberg, "Missouri Needs Marijuana Reform," supra. My disagreement on this issue, however, extends only to the result and not to the majority's reasoning as to the legally logical, if philosophically unconscionable, consequence of the decision in *State v. Burrow,* 514 S.W.2d 585 (Mo.1974); cf., *State v. Rao,* No. 19961, Superior Ct. Conn. (1976); *People v. Sinclair,* 387 Mich.

91, 194 N.W.2d 878 (1972); *People v. McCabe,* 49 Ill.2d 338, 275 N.E.2d 407 (1971).

Because I believe our court lacks jurisdiction in this matter, I would certify this cause to the Missouri Supreme court.