STATE OF MONTANA, Plaintiff and Respondent, v. JOHN A. O'DONNELL, Defendant and Appellant.

No. 10112.

Submitted June 14, 1960. Decided September 7, 1960.

354 P.2d 1105.

Lee Overfelt, Billings, argued orally for appellant.

Forrest H. Anderson, Atty. Gen., Wayne E. Linnell, Asst. Atty. Gen., William J. Speare, County Atty., Billings, for respondent. Wayne E. Linnell argued orally.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment of conviction of the crime of grand larceny entered on a jury verdict.

The offense charged was that of stealing a cow. The defendant was arrested at about 3:30 a.m. on a snowy, cold morning February 10, 1958, in a pickup truck in which a still-steaming butchered beef was being hauled. The defendant was in a truck being driven by one Gonzales. In the cab of the truck was a gun belonging to defendant or his son, knives and axe used in the butchering of the cow. The defendant's clothes were bloodstained.

According to the prosecution's case, the witness Gonzales was contacted by the defendant who offered to sell him some beef.

Gonzales suspected that the defendant had no intention of selling beef that he owned and informed the police of the offer. Undersheriff Davidson advised Gonzales to cooperate with the defendant. Gonzales furnished the transportation but was directed by the defendant to the scene of the crime. Gonzales testified that the defendant shot the cow, and that he, Gonzales, assisted the defendant in butchering and loading the carcass into the truck. Enroute back to Billings, the truck was stopped and the arrest made.

The defendant took the stand in his own behalf. His version of the crime did not differ much in many respects, but did differ in that he testified that Gonzales killed, butchered, and loaded the animal, that he did not participate at all except to explain the blood on his own clothing by saying:

"Q. Did you help him in any way? A. Yes he got back there and he was rattling the chain and hollering for me and he said 'come back and help me close this tailgate, I can't get the tailgate closed', so I finally got out and walked back and the tailgate was down and I got the tailgate and Mr. Gonzales was in the back of the pickup and I started to raise the tailgate and he had this meat piled up in the back and he pushed a piece right into me and I put my leg up and caught it to keep from dropping it and I held it up there until he pulled it back in the pickup and he got out and closed the tailgate and drove on back to Billings."

The defendant also explained shells in his pocket by describing how Gonzales shot over the heads of the cattle several times and he, the defendant, just picked up the shells and put them in his pocket. He also explained his interest in the midnight expedition on a cold, snowy night in February, by a story about his desire to make some sausage.

The defendant denied any knowledge that a crime was being committed and stated that he thought Gonzales had been given authority by his employer to kill the cow.

Each participant, the defendant and the State's witness Gon-

zales, were revealed to have been previously convicted of a felony.

Different defense counsel presented this appeal than counsel who tried the case before the jury.

■ Appellant set forth six specifications of error which largely go to one basic objection, viz., that the trial court failed to fully instruct the jury on the theory of entrapment. The only instruction offered on the theory of entrapment was as follows:

"You are instructed that before the defendant can be convicted in this case, you must find beyond a reasonable doubt that the criminal intent to commit the specific crime charged originated in the mind of the defendant and not in the mind of some other person."

"Mr. Adams: Object to Defendant's No. 12 on the grounds and for the reasons it relates to material matters pertaining to entrapment which is not involved in this case, in that it relates to the fact that this specific crime charged must originate in the mind of the defendant and not in the mind of some other person; it is also a misstatement of law with respect to that fact."

The mere quotation of the offered instruction reveals that it is incomplete and inaccurate. We shall not decide whether or not the instruction was proper, but rather whether under the facts and circumstances of this case the defense of entrapment pertained at all.

At the trial the defendant testified that Gonzales alone killed, butchered and loaded the animal, and that he helped only in closing the pickup's tailgate at Gonzales' request. The defendant *denied* commission of any crime and claimed that he believed Gonzales had authority to kill the cow. Nowhere does defendant admit committing the offense nor was it ever contended that the accused was lured or entrapped into the crime. We observe that it is a stretch of credulity to follow defendant's version that as an ex-convict he would accompany another ex-

convict after midnight on a cold snowy night to an unknown rural range to kill a cow for a sausage-making bee under the belief that it was normal and that Gonzales had authority to· kill the cow.

In State v. Parr, 129 Mont. 175, 181, 283 P.2d 1086, 1089, 55 A.L.R.2d 1313, Mr. Justice Angstman writing, this court held that:

"The defense of entrapment is an affirmative one, and the burden of proving it is on defendant if he would rely on it. People v. Braddock, 41 Cal.2d 794, 264 P.2d 521; People v. Gutierrez, 128 Cal.App.2d 387, 275 P.2d 65; People v. Lee, 9 Cal.App.2d 99, 48 P.2d 1003. There being no proof in the record sustaining the theory of entrapment the court properly refused to instruct the jury on the question.

"Also it should be noted that defendant himself did not suggest that he was induced or lured into the offense through entrapment. He denied that he sold liquor to Gallagher. The rule is that the defense of entrapment is not available to one who denies commission of the offense. Annotation 33 A.L.R.2d 910. Had the issue of entrapment been properly presented in the case by some evidence on behalf of defendant, then it would also have been proper for the state to show, as it attempted to do here, that the officers were acting in good faith and in the belief based upon reasonable information that defendant was engaged in selling whiskey to minors contrary to law. Compare Annotation 33 A.L.R.2d 908.

"The suggestion that the officers of the law acted in violation of the law declared in R.C.M. 1947, § 10-617, in procuring the evidence against defendant is far-fetched. But if they did violate the law, that does not give the defendant here the green light to violate the law with impunity."

In further support of his position that the Court below erred in failing to instruct the jury on the theory of entrapment, the appellant cites State v. Neely, 90 Mont. 199, 300 P. 561; State v. Hayes, 1891, 105 Mo. 76, 16 S.W. 514, and People v. Collins,

1878, 53 Cal. 185. In each of these cases, however, the undisputed evidence established that an agent of the police, and not the defendant, committed some of the essential elements of the offense charged. These cases only held, that under these circumstances, it was error not to instruct the jury that the defendant must have participated in every essential element of the crime charged to make out a complete offense against the law and that none of the acts by the feigned accomplice could be imputed to the accused.

In the instant case, such a charge was given in the trial court's Instruction No. 6, which states:

"You are instructed that before the Defendant may be held criminally responsible in any case, it is necessary to show beyond a reasonable doubt that the defendant participated in each and every essential act necessary to constitute the crime as defined by these instructions."

The court below further instructed the jury:

Instruction No. 2. "You are instructed that the crime of grand larceny charged against the defendant refers to a live animal and the evidence in this case must show beyond a reasonable doubt that the defendant killed and reduced to possession the animal as alleged in the information."

The actual holdings of the above cases, so far as they are applicable in the principal case, were satisfied by the instructions given by the court below.

The appellant admits in his brief that the defense of entrapment is a positive one and necessarily assumes that the act charged was committed, and further admits that the trial court may only instruct the jury on matters of law properly raised by the evidence presented at the trial. By denying commission of the crime, the defendant precluded any contention on this appeal that the court below erred in refusing to instruct the jury on the theory of entrapment.

The appellant also specifies as error the failure to give an instruction on mere presence at the scene of a crime. We

have examined the instructions given by the trial court, and find that under the facts and circumstances of this case no error was committed.

The judgment is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE ANGSTMAN, concur.

MR. JUSTICE BOTTOMLY:

I concur in the result reached by the majority opinion, only because the defendant, at the time of his trial, did not admit committing the offense charged, nor was it ever contended by the defendant that he was lured or entrapped into committing the offense. Defense counsel on this appeal was not defendant's counsel in district court.

MR. JUSTICE ADAIR specially concurring in the result.

While entrapment is a recognized valid defense, yet it is not the entrapping of the criminal that the law frowns upon, but it is the seduction of innocent persons into a criminal career by officers of the law.

It is only when the criminal design does not originate with the accused, and a decoy is used to ensnare an innocent person by deceitful representations, persuasions, inducement or allurement into the commission of the crime by the accused, that there is entrapment.

The substantial evidence required to support the theory of entrapment is absent from the record before the court on this appeal, for which reason I concur in the result pronounced, but not in all that is said in the majority opinion.