THE STATE OF MONTANA, PLAINTIFF AND RESPONDENT, v.
CHARLENE WHITE, DEFENDANT AND APPELLANT.

No. 11587.
Submitted May 13, 1969.
Decided June 10, 1969.
456 P.2d 54.

Sandall, Moses Cavan, Charles F. Moses argued, Billings, for appellant.

Robert L. Woodahl, Atty. Gen., Douglas Wold, Asst. Atty. Gen., Helena, John L. Adams, Jr., County Atty., Christopher J. Nelson, Deputy County Atty., appeared, Billings, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from a conviction for selling narcotics. On February 26, 1968, an information was filed in Yellowstone County, charging the appellant, Charlene White, with two counts of the sale of narcotics. On September 30, 1968, the appellant was tried and found guilty of both counts. She was subsequently sentenced to 18 months in the state prison at Deer Lodge, Montana.

The State's evidence largely consisted of the testimony of one Charles Restow, an agent for the Federal Bureau of Narcotics and Dangerous Drugs, and one Stewart Summers, an analytical chemist for the U. S. Food and Drug Administration.

Agent Restow testified that he purchased what were allegedly marijuana cigarettes from the appellant on both January 14 and February 12, 1968. With regard to the first purchase he testified as follows:

"A. On the evening of the 14th; I entered the Tampico Restaurant and was having a cup of coffee in a booth, at which time Charlene sat on the opposite side to me, and a conversation ensued, and she said, and I quote, 'Honey, do you want to do something naughty?'

"Q. And your answer to that? A. I told her, 'No, that I did my own thing'—this is undercover terminology, and it means that I wasn't interested in a prostitute, that I had another racket that I was working in. She then inquired what it was, and I said, 'Well, I smoke dope,' at which time she said, 'I have dope, it might put you in the right mood.' She then exited

the booth and walked to the restroom area behind the counter and got into her purse, and walked back to the booth and sat down, and she was carrying a match box which she put in my lap; she said, 'There is two cigarettes in there, they will cost you $3.00.' I then gave her $3.00 of Government funds.''

Mr. Summers testified that he examined these cigarettes (the chain of evidence is not questioned on this appeal) and that this examination revealed that all the cigarettes contained marijuana. Of interest is the fact that it was not until cross-examination that he testified the cigarettes contained the leaves of marijuana.

The appellant was the sole witness to appear on her behalf and she testified that she could not recall where she was on the 14th of January but that on the night of February 12, 1968 she was at a drive-in movie and not at the restaurant at all at the time agent Restow had testified he had purchased a third cigarette from her. She stated she had never seen agent Restow before.

The appellant has raised four issues on appeal. They will be discussed in the order they are set out below:

1. The legislature does not have the power to declare marijuana a narcotic drug.

2. The evidence was insufficient to justify the conviction of the appellant and the case should have been dismissed.

3. Agent Restow gave testimony inadmissible and prejudicial to the appellant.

4. The constitutional rights of the appellant were violated by obvious entrapment in this case.

Issue 1. The essence of appellant's first charge is since marijuana is not a narcotic, but more precisely a hallucinogen, it was beyond the power of the legislature to call it a narcotic. We agree with her argument that it would be beyond the authority of the legislature to declare orange juice an intoxicating liquor, but as we have noted previously, it can define as intoxicating

196

any beverage containing 2% alcohol by volume. State v. Centennial Brewing Co., 55 Mont. 500, 178 P. 296 (1919).

The question is not whether marijuana is in fact a narcotic, but whether under the known facts at the time of the legislation it was *reasonable* to so classify it. See In the Matter of Yun Quong, 159 Cal. 508, 114 P. 835 (1911). [More precise information has now led the legislature to reclassify marijuana. See Chapter 314, Montana Session Laws, 1969.] The appellant has not offered evidence that it was unreasonable to classify marijuana as a narcotic at the time the legislature acted in 1937. Her argument on this issue is therefore without merit.

Issue 2. This argument is based on section 54-101(13), R.C.M. 1947, which excepts from the definition of "cannabis" the mature stalks of such plants. Appellant reasons that cannabis and marijuana are one and the same and that the State must, as part of its case, prove that what she sold was not the mature stalks in order to take it out of the exception.

Section 54-101(14), R.C.M.1947, defines both cannabis and marijuana as being "narcotic" and within the prohibition of the act. But even if we accept appellant's conclusion that they are the same, her trial counsel brought out himself, on cross-examination, that the cigarettes contained the leaves of marijuana, which under the statute is not within the exception. Clearly then, the State did prove that the cigarettes sold contained narcotic material wihtin the prohibition of the law.

Issue 3. During the course of his examination agent Restow made the following statement:

"Q. Did you subsequently purchase at a later date another *cigarette?* (Emphasis supplied.) A. On the 17th day of January, I met Charlene White, and she sold me four capsules for $6.00, which she alleged was seconal."

Appellant argues this is proof of another crime which is prohibited by State v. Meritt, 138 Mont. 546, 357 P.2d 683 (1960). However, appellant's trial counsel did not object that the testimony was inadmissible, but only that it was not responsive to

the question. The court instructed the jury to disregard the statement and we can see no actual prejudice arising out of the statement.

 Issue 4. Appellant urges that she was entrapped into committing the offenses charged. At the outset it should be noted that under our rule as announced in State v. Parr, 129 Mont. 175, 283 P.2d 1086, 55 A.L.R.2d 1313 (1955) and State v. O'Donnell, 138 Mont. 123, 354 P.2d 1105 (1960), that entrapment is an affirmative defense which the defendant has the burden of proving. Even were we to concede that the facts here brought on any defense of entrapment, appellant did not elect that course and instead offered an alibi as her defense. Accordingly she is not to be permitted to raise this question for the first time on appeal. Sylvia v. United States, 312 F.2d 145 (1 Cir. 1963).

Nevertheless, appellant has presented a novel and interesting argument. She would have us rule that the requirement to elect to admit guilt before proceeding with the defense of entrapment violates her fundamental rights to due process of law under the 14th Amendment to the United States Constitution. She argues that if she elects entrapment as a defense, she has to give up the presumption of innocence, and in so doing is denied due process.

What was the election made by the appellant? She had one attorney try the case and another appeal it. The trial attorney cross-examined as to entrapment, and then apparently elected to use alibi as a defense instead.

The question then is whether *that* election raises the due process problem appellant would have us inquire into. We think not. In our view this case is similar to the line of cases coming within the doctrine of invited error, which we have impliedly recognized in State v. Campbell, 146 Mont. 251, 267, 405 P.2d 978 (1965). That doctrine holds that the failure to raise an issue in the lower court cannot be used upon appeal as a ground for establishing error; and that a waiver of an actual error dur-

198

ing the trial forecloses its use as a basis for reversal. See Hartley v. State, 4 Md. App. 450, 243 A.2d 665, 672 (1968); and People v. Bostick, 38 Cal.Rptr. 633, 392 P.2d 393, 397 (1964).

In this case appellant did not give up her presumption of innocence, but instead relied on it. Granted she did give up the defense of entrapment, but the waiver of that defense does not raise the due process question argued here. Appellant cannot claim error in her election to avoid giving up the presumption of innocence, on the grounds that *had* she given it up, she might have been denied due process of law.

Finding no error in the proceedings of the lower court, the judgment is affirmed.

MR. JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES, HASWELL and BONNER, concur.