(No. 42674.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. THOMAS McCABE, Appellant.

*Opinion filed October 15, 1971.—Rehearing denied Nov. 24, 1971.*

SCHAEFER, J., took no part.

UNDERWOOD, C. J., and RYAN, J., dissenting.

THOMAS P. SULLIVAN, and DOUGLAS C. NOHL-GREN, both of Chicago, (JENNER & BLOCK, of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and JOEL M. FLAUM, JAMES B. ZAGEL and WARREN K. SMOOT, Assistant Attorneys General, of Chicago, (WILLIAM R. KETCHAM, of counsel,) for the People.

PER CURIAM: Following a jury trial in the circuit court of Kane County the defendant, Thomas McCabe, was found guilty of the unlawful sale of marijuana in violation of the Criminal Code of Illinois. (Ill.Rev.Stat. 1969, ch. 38, par. 22—3.) Pursuant to the provisions for mandatory minimum penalties for the unlawful sale of a narcotic drug (Ill.Rev.Stat. 1969, ch. 38, par. 22—40) the defendant, who had no prior convictions, was sentenced to the penitentiary for a period of ten years to ten years and a day. On this appeal he raises these grounds for reversal: (1) the classification of marijuana in the Narcotic Drug Act (Ill.Rev.Stat. 1969, ch. 38, par. 22—1 *et seq.),* with mandatory minimum statutory penalties for a first conviction, deprives the defendant of due process and equal protection of the law in violation of the constitution of Illinois and the constitution of the United States; (2) the Narcotic Drug Act's mandatory minimum ten-year sentence and its prohibition of probation or the suspension of sentence upon a first conviction for the sale of even a trifling amount of marijuana to an adult constitutes cruel and unusual punishment in violation of the constitution of Illinois (Const. of 1870, art. II, sec. 11) and the constitution of the United States (U.S. Const., amend. VIII); (3) the defendant was deprived of equal protection of the law in that no meaningful post-trial hearing in mitigation was held; (4) the trial court erred in numerous evidentiary rulings; (5) the closing argument of the prosecutor was improperly prejudicial to the defendant; (6) the trial court erred in instructing the jury; and (7) the mandatory minimum penalty provision of the Narcotic Drug Act unconstitutionally interferes with the prerogative and the duty of the judiciary to impose sentence as the exercise of sound discretion may direct.

To begin it will be helpful to exclude some of the potential questions the defendant does not raise regarding the classification of marijuana. It is not denied, for example, that the State has authority under its general

police power to prohibit the sale, use, or possession of marijuana. Nor does the defendant contend that the State must limit its exercise of that power to the regulation, as opposed to the prohibition, of the drug. Finally, the defendant does not claim that the State, having chosen to proscribe the use, possession, and sale of marijuana, must similarly act in the cases of substances such as alcohol, tobacco and caffeine, whose use may be harmful.

The equal-protection argument which is raised is narrow and limited. It simply is that the present placing or classifying of marijuana under the Narcotic Drug Act rather than classifying it under the Drug Abuse Control Act (Ill.Rev.Stat. 1969, ch. 111½, par. 801 *et seq.*) with the "stimulant or depressant" drugs is constitutionally invalid as an improper classification, considering the present state of knowledge concerning the comparative natures and effects of the drugs named in the two statutes. Unlike the Narcotic Drug Act, which provides for a mandatory ten-year minimum sentence upon a first conviction for the sale of marijuana, the Drug Abuse Control Act provides, upon a first conviction for the sale of drugs named in it, a maximum jail term of but one year and probation is not prohibited. The defendant says that there is no rational basis for distinguishing a first sale of marijuana from the first sale of a stimulant or depressant drug under the Drug Abuse Control Act and that the gross disparity between the penalties violates his rights under the equal-protection clause.

In determining whether a statutory classification violates the equal-protection clause, we must begin with the presumption that the classification is valid and must impose the burden of showing invalidity on the party challenging the classification. *(City of Rockford v. Grayned, 46 Ill.2d 492; Thillens, Inc. v. Morey, 11 Ill.2d 579, 591; People ex rel. Vermilion County Conservation District v. Lenover, 43 Ill.2d 209, 219.)* The equal-protection clause does not deny the States the power to classify in the

exercise of their police power and it recognizes the existence of a broad latitude and discretion in classifying. *(Begich v. Industrial Com. 42 Ill.2d 32, 36.)* If any state of facts may reasonably be conceived which would justify the classification, it must be upheld (see *Begich v. Industrial Com. 42 Ill.2d 32).* The right of judicial questioning of a classification under the equal-protection clause is thus limited. As this court put it in *Thillens, Inc. v. Morey, 11 Ill.2d 579, 593,* "Whether the enactment is wise or unwise; whether it is based on sound economic theory; whether it is the best means to achieve the desired results, and whether the legislative discretion within its prescribed limits should be exercised in a particular manner are matters for the judgment of the legislature, and the honest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance." But it is required that there be a reasonable basis for distinguishing the class to which the law is applicable from the class to which it is not. *(People ex rel. County of Du Page v. Smith, 21 Ill.2d 572, 578.)* Appropriate respect should be given to the fact of a legislative classification, but there is a judicial obligation to insure that the power to classify has not been exercised arbitrarily and, if it has been, the legislation cannot be justified under the label of "classification." *(Begich v. Industrial Com. 42 Ill.2d 32, 36.)* It was observed recently: "[A] state may not, under the guise of classification, arbitrarily discriminate against one and in favor of another similarily situated." *Lake Shore Auto Parts Co. v. Korzen, 49 Ill.2d 137, 148.*

Measuring by these criteria we must determine whether any rational basis exists to justify the substantially greater penalties imposed for a first conviction for the sale of marijuana than for a first conviction for the sale of a drug named in the Drug Abuse Control Act. This consideration will require an assessment of the relevant scientific, medical and social data found, including the voluminous materials assembled by the parties here, which

are pertinent to support and to defeat the classification. We are aware that any compilation and examination of materials cannot comprehend all studies that have been made. We know, too, that knowledge in this whole area is not nearly complete. We proceed not to determine scientific questions, but to judge whether the data presently available provides a reasonable basis for the described classification of marijuana. *(Cf. Precision Connecting Rod Service v. Industrial Com., 40 Ill.2d 277, 281.)* The consideration of this data, of course, will not extend to the wisdom or unwisdom of the legislative classification. We confine our examination to the question whether the challenged classification can be supported on any rational basis.

Knowledge of the characteristics and effects of the drug commonly called marijuana, which is obtained from the leaves of the female hemp plant, *cannabis sativa*, has developed rapidly in the last decade. Studies by Presidential commissions, whose memberships have included psychiatrists, pharmacologists, sociologists and law enforcement officials as well as intensified research in the medical and scientific communities have contributed to this advancement. The consensus is that although marijuana has been commonly associated with the opiates, such as morphine and heroin, there are important differences between the so-called abuse characteristics of the two. Heroin and morphine are true narcotic analgesics in the sense that their use produces a marked indifference to pain. In addition, when injected intravenously a warm flushing of the skin and intense pleasurable sensations in the lower abdomen will result. Repeated usage of these drugs in a comparatively short time will result in the development of a tolerance, that is, a state which requires a gradually increasing dosage to permit the drug to attain the effect desired. Both a psychological and compelling physical dependence result from the use of "hard narcotics." The physical dependence develops in intensity with

continued use and requires the continued administration of the drug to avoid withdrawal symptoms. It appears that the subjective action of the morphine-type drugs also involve changes in mood, an inability to concentrate and the development of apathy. Physical degeneration occurs, arising from drug preoccupation, personal neglect, malnutrition and susceptibility to infections. Overdosage can cause death through excessive respiratory depression.

Early withdrawal symptoms include lacrimation, nasal discharge, yawning and perspiration. Later, dilated pupils, loss of appetite, gooseflesh (thus, the expression "cold turkey"), restlessness and increased irritability and tremor will appear. At its peak intensity, the syndrome includes high irritability, insomnia, violent yawning, severe sneezing and lacrimation. Nausea and vomiting are common, as are intestinal spasms and diarrhea. Increased heart beat and elevated blood pressure, as well as muscular spasms, abdominal cramps and pains in the bones and muscles of the back are common. Death due to cardiovascular collapse can result from withdrawal. These symptons are caused by the drug-induced alterations at the cellular level, most prominently in the central nervous system. Most authorities consider that the drug addict's frequent involvement in criminal activity results from his acute need for the drug rather than because of the action of the drug itself. The term addiction refers to the physical, rather than a psychological dependence on the drug.

Cocaine, which is placed with marijuana and the opiates in the Narcotic Drug Act, is a powerful stimulant, whereas the morphine-type drugs have a depressing action. Too, cocaine is further unlike the opiates in that it does not have effects of tolerance or physical dependence and abstention does not cause acute withdrawal symptoms. However, because of its potent nature, it induces intense physical and mental excitation and a marked reduction in normal inhibitions which often results in aggressive and even violent behavior. Intense hallucinations and paranoid

delusions are common and, because of this, cocaine users frequently attempt to dilute the experience with a depressant such as heroin or morphine.

The properties and consequences of the use of marijuana differ from those attending the use of opiates or cocaine. The acute physical symptoms of marijuana use typically induced are an increase in pulse rate, a slight elevation in blood pressure, conjunctival vascular congestion, a rise in blood sugar, urinary frequency, dryness of the mouth and throat. Nausea, vomiting and occasional diarrhea have been observed, as has the inability to coordinate voluntary muscular movements. There is usually a marked increase in appetite. Deaths due to overdose apparently have not been reported.

The mental or subjective effects of the administration of this drug are variable and depend on the interaction of several factors including the physical and pharmacological properties of the particular marijuana used, the amount of dosage, and more importantly, what has been called the character structure of the user (including his experience with the drug, his attitude and expectations), and the social setting or environment in which the drug is used. The most common reaction is the development of a euphoric state of altered consciousness in which ideas seem disconnected, uncontrollable and freely flowing. Time perception is distorted with minutes seeming like hours. Spatial conception may also be disturbed. Vivid hallucinations, usually, but not always, pleasant, can occur with increased dosage. There may be marked alterations of mood, usually manifested by an extreme feeling of well being which is often accompanied by uncontrollable laughter. Later a more somber or depressed mood will appear. The drug's influence can cause anxiety, confusion or disorientation, and with larger doses temporary psychotic episodes have been observed in predisposed individuals. Inhibitions are reduced but violent or otherwise aggressive behavior seem to be rare.

Almost all authorities agree that marijuana is not a narcotic or addictive in the sense that the terms are precisely used. Unlike the opiate drugs, it does not produce a physical dependence, and upon abstention there are no withdrawal symptoms. A tolerance to the drug does not develop. Marijuana use does, however, lead to a mild psychological dependence. The short-hand descriptive phrase most often applied to the drug is "mild hallucinogen," although this refers to only one of its many effects.

The depressant and stimulant drugs within the Drug Abuse Control Act include the barbiturates (depressants), the amphetamines (stimulants), and the hallucinogens. The drugs psilocybin, peyote, mescaline and what is commonly called LSD are examples of the hallucinogens. Frequent use of the barbiturates at high dosage levels leads invariably to the development of physical dependence, tolerance and severe withdrawal symptoms, similar to those associated with heroin use. The effects of barbiturate intoxication resemble those of alcoholic intoxication. There is a general sluggishness, difficulty in concentrating and thinking, speech impairment, memory lapse, faulty judgment and exaggeration of basic personality traits. Irritability and quarrelsomeness are common. Hostile and paranoid ideas as well as suicidal tendencies can occur. Barbiturates are said to be the most frequently used chemical in suicides in the United States. Accidental death from an overdose also can occur. There is a clear association between barbituric intoxication and accidents and traffic fatalities. The drug can depress a wide range of functions, including the nerves, skeletal muscles and the cardiac muscle. Barbiturates are frequently used by heroin addicts to boost the effect of weak heroin.

The consensus of the amphetimines (stimulants) is that, unlike the barbiturates, their abuse does not lead to a physical dependence, but the development of a high tolerance and a strong psychological dependence are common. Occasional dosage under medical supervision

causes only an elevation in mood and a state of well-being. Long term dependence, however, leads to serious mental and physical problems. Malnutrition and debilitation due to self-neglect will appear. A well known complication of amphetamine abuse is paranoid schizophrenia. The user may react violently to his persecutive delusions. Visual and auditory hallucinations occur and can persist long after use is discontinued. Although true withdrawal symptoms do not occur, the latter stages of excitement and mental disarrangement are difficult to endure. To take the edge off this tense euphoria, the user will sometimes turn to barbiturates or the opiates.

Special mention should be made of one particular amphetamine, methamphetamine, commony called "speed." Its effects are generally the same as other amphetamines, only markedly intensified. There is evidence that large doses result in permanent brain damage. The drug's lethal qualities are well documented. The potential for violence, paranoia and physical depletion are substantially more severe.

Also placed under the Drug Abuse Control Act are the hallucinogens or the "psychedelics." LSD is the best known and one of the highly potent forms of these drugs. Less potent hallucinogens include psilocybin, peyote, and mescaline and hashish (another derivative of the plant from which marijuana comes). As with marijuana usage, a true physical addiction does not occur with LSD, in that withdrawal effects do not follow abstinence. Frequent use of LSD will lead rapidly, however, to the development of a high tolerance. Psychological dependence develops as it does with exposure to almost any substance which alters the state of consciousness. During LSD-intoxication severe panic and paranoid reactions are encountered. Attempts at suicide as well as uncontrolled aggression are among the dangers to the intoxicant. Hallucinations are common, accompanied by feelings of grandiosity and omnipotence. Recurrences of the LSD experience weeks or months after

the last drug intake are well known. Various emotional disorders have been observed following exposure to LSD. A chronic anxiety state is the most common. Prolonged psychotic reactions also have been identified with LSD. Too, there is also growing evidence that LSD can cause chromosomal damage.

Against this background of comparison one would conclude that neither the chemical properties of the drugs nor their effects on the behavior of the users provides any justifiable or reasonable basis for the sharply disparate penalties which are imposed for a first sale of marijuana and for a first sale of a drug under the Drug Abuse Control Act. Too, the consequences of abusive use of marijuana certainly appear not to be comparable to the demonstrated and profound ill-effects of opiate or cocaine addiction. Marijuana, in terms of abuse characteristics, shares much more in common with the barbiturates, amphetamines and, particularly, the hallucinogens than it does with the "hard drugs" classified in the Narcotic Drug Act. Marijuana does differ from the barbiturates and amphetamines in that it has no established medical use, but neither do LSD, peyote, or mescaline. Thus, one cannot reasonably distinguish marijuana from the substances under the Drug Abuse Control Act on this basis.

Nor is there any reasonable basis for placing marijuana under the Narcotic Drug Act and not under the Drug Abuse Control Act because of any compulsion to abuse. The compulsion associated with marijuana has been described as moderate or mild. The same is true of the amphetamines. The opiates and cocaine, on the other hand, have a maximal compulsive quality in this regard. Barbiturates, too, have this quality. Thus, in this respect, marijuana is dissimilar from the other drugs in the Narcotic Drug Act. Indeed, from this limiited standard of comparison it is the barbiturates under the Drug Abuse Control Act, and not marijuana, which approximate the characteristics of the true narcotics.

Another factor which has been frequently advanced to provide a justifiable basis for classifying marijuana under the Narcotic Drug Act rather than under the Drug Abuse Control Act is that the use of marijuana progresses to heroin use and addiction. This thesis, once broadly entertained, has recently encountered serious challenge. Today it is reported that the vast majority of marijuana users do not graduate to the use of heroin. In 1969, Dr. Stanley F. Yolles, then Director of the National Institute of Mental Health, testified before the Congress that there is nothing in the properties of marijuana which predisposes the use of heroin. He also estimated that only a small percentage of chronic users of marijuana go on to use heroin. This is not to deny any association between marijuana and heroin. The most commonly accepted thesis today is that a drug sequence or movement from one drug to another results from the cumulative effect of several factors, including: the pharmacological properties and effects of the drugs, the personality structure of the user, and the pressures of the so-called host environment. Thus, the chronic use of any drug presents a danger of graduation to other and more dangerous drugs. Observed, for example, has been a clear association between barbiturate abuse and heroin addiction. The barbiturate-heroin connection is also true with respect to the criminal trafficking in these drugs. Whatever can be said of marijuana use leading to the use of other and so-called harder drugs can be applied, and to a probably greater extent, to barbiturates, methamphetamine and LSD.

The extensive criminal involvement of persons addicted to heroin is well known. The intense craving for the drug and the dread of symptoms following its withdrawal lead addicts to engage in criminal activities to finance their habit. It has been said that marijuana use also causes violence, crime and antisocial acts. However, since tolerance, physical dependence, or withdrawal symptoms do not attend its use, this thesis has been criticized. Some say

that since the effect of marijuana is to induce a passivity in the user, the drug has a negative relation to criminality and aggressive behavior. But as marijuana is generally a disinhibitor, it must be recognized that antisocial conduct can occur in a predisposed individual. But this is, of course, equally true regarding the stimulant or depressant drugs and the hallucinogens. And, violent and aggressive conduct is a more common reaction to these latter drugs because of the paranoiac psychosis which they can produce in the user. Thus, it can be concluded that the thesis that marijuana use, as does the use of the opiates and cocaine, leads to criminal activity cannot provide a basis for distinguishing marijuana from the depressant and stimulant drugs or the hallucinogens.

Observations to be drawn on marijuana are that it is not a narcotic and it is not truly addictive. Its use does not involve tolerance, physical dependence or the withdrawal syndrome. Physical ill effects from its use are, so far as is known, relatively moderate. Its abuse does not have the profound and ill consequences observed in the use of some of the other drugs considered. Its use does not singularly or extraordinarily lead to opiate addiction or to aggressive behavior or criminal activity.

Against the entire background of the drugs considered we judge that the classification of marijuana under the Narcotics Drug Act rather than under the Drug Abuse Control Act has been arbitrary. A comparison of the drugs leads to a conclusion that marijuana more closely resembles drugs placed in the Drug Abuse Control Act. It is, comparatively speaking, dissimilar from drugs under the Narcotic Drugs Act. We do not find a rational basis for the classification, a consequence of which is that one first convicted of the sale of marijuana must without qualification receive a sentence ten times greater than one permitted to be imposed on one convicted for the first time of a sale of drugs under the Drug Abuse Act. The absence of a rational basis for distinguishing first convic-

tions for sales of marijuana from first convictions for sales of drugs placed in the Drug Abuse Control Act compels the conclusion that the present classification of marijuana offends the equal-protection clause of the United States constitution and our new constitution of Illinois and was in violation of section 22 of article IV of the former constitution of this State.

We would observe that the legislature has recently removed marijuana from the Narcotic Drug Act and reclassified it under the Cannabis Control Act, H.B. 788, P.A. 77—758, approved August 16, 1971. Henceforth, a first sale of a small quantity of marijuana to an adult, as was the case here, will result in only minor criminal penalties. This reclassification is not inconsistent with what we have said here.

It is appropriate to note that we are not unmindful of the prior Federal and State decisions which had rejected constitutional attacks on Federal and State statutes classifying marijuana with the "hard drugs." (See *United States v. Eramdjian (S.D. Cal. 1957), 155 F.Supp. 914; State v. White, 153 Mont. 193, 456 P.2d 54; Borras v. State (Fla.), 229 So.2d 244; Raines v. State (Fla.), 225 So.2d 330; People v. Stark, 157 Colo. 59, 400 P.2d 923; Spence v. Sachs, 173 Ohio St. 419, 183 N.E.2d 363; People v. Walton, 116 Ill.App.2d 293; Gonzales v. State (Tex.Crim.App.), 373 S.W.2d 249; Commonwealth v. Leis, 355 Mass. 189, 243 N.E.2d 898.*) We would point out that the constitutional ground raised by the defendant here was not presented in any of the cited cases.

The State contends that the constitutional argument which the defendant has presented here was waived and not preserved for review because it was not raised in his written motion for a new trial. The record shows that the defendant plainly raised the constitutional question in his pretrial motion to quash the indictment, argued it, and secured the court's ruling on the question. It was not the character of claimed error to be raised on a motion for a

new trial. *(People v. Irwin, 32 Ill.2d 441, 444.)* He referred to the constitutional point orally in his post-trial motion and we regard that as an oral motion for arrest of judgment. We consider that the defendant preserved the constitutional question for review. *People v. Irwin, 32 Ill.2d 441, 444.*

We hold that the present classification of marijuana is arbitrary and deprives the defendant of equal protection of the law. The remainder of the Narcotic Drug Act is not affected by this holding, as we judge it is severable (see *People ex rel. Adamowski v. Wilson, 20 Ill.2d 568)* from that portion of the statute which concerns marijuana.

It will not be necessary to consider the other contentions advanced by the defendant. For the reasons given, the judgment of the circuit court of Kane County is reversed.

*Judgment reversed.*

MR. JUSTICE SCHAEFER took no part in the consideration or decision of this case.

MR. CHIEF JUSTICE UNDERWOOD, dissenting:

Subsequent to defendant's conviction under the Narcotic Drug Act and while this appeal was pending, the General Assembly enacted the Cannabis Control Act, H.B. 788, P.A. 77-758, which provides for substantially reduced criminal penalties for possession and sale of marijuana. Section 18 of that Act provides: "Prosecution for any violation of law occurring prior to the effective date of this Act is not affected or abated by this Act. If the offense being prosecuted would be a violation of this Act, and has not reached the sentencing stage or *a final adjudication,* then for purposes of penalty the penalties under this Act apply if they are less than under the prior law upon which the prosecution was commenced." (Emphasis supplied.)

In my opinion, this provision regarding sentencing may reasonably be interpreted to include all cases still in

the appellate process *(People v. Vernon R. Bailey, 1 Ill. App.3d 158; People v. Carleton, 116 Ill.App.2d 450)*, and would therefore apply to this case. Accordingly, I would not reach the constitutional question presented and would remand for resentencing in compliance with the sentencing provision of the Cannabis Control Act.

However, since the majority concludes that the inclusion of marijuana in the Narcotics Drug Act is an unconstitutional classification, it is necessary to state my further disagreement with that conclusion. Defendant concedes that when the first Illinois drug act was passed in 1931, the combining of marijuana with "hard drugs" seemed to be legitimate, and that if only "hard drugs" were prohibited in Illinois, it still might not be irrational to put marijuana in that category. Defendant contends, however, that after the legislature created a second and lesser category of prohibited drugs by enacting the Drug Abuse Control Act in 1967, it was no longer rational to continue "to assign marijuana to the category with which it has much less in common, rather than to the category with which it has much more in common."

The majority's lengthy discussion of the characteristics and effects of marijuana as compared to other prohibited drugs clearly illustrates that no two drugs are identical and that marijuana is also quite different from the stimulant or depressant drugs with which defendant seeks to classify it. The fact that a substantial body of scientific and medical opinion now considers marijuana to be more nearly like the drugs included in the Drug Abuse Control Act than those prohibited by the Narcotic Drug Act does not, in my opinion, necessitate the conclusion that there was no rational basis for the classification in question. Medical and scientific opinion is even now by no means unanimous in condemnation of classifications of marijuana with "hard drugs" and, as the majority notes, "knowledge in this whole area is not nearly complete." In the absence of more nearly conclusive evidence that the

legislative judgment was devoid of any rational basis, a finding of unconstitutionality is unwarranted, for few rules of law are more soundly bottomed than that which proscribes judicial interference with legislative discretion. As this court said in *Thillens, Inc. v. Morey, 11 Ill.2d 579, 593:* "Whether the enactment is wise or unwise; whether it is based on sound economic theory; whether it is the best means to achieve the desired results, and whether the legislative discretion within its prescribed limits should be exercised in a particular manner are matters for the judgment of the legislature and honest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance." In the context of current drug knowledge I would uphold the former statutory classification of marijuana within the Narcotics Drug Act as a constitutional exercise of legislative discretion.

Accordingly, I would affirm the conviction and remand for resentencing under the sentencing provision of the Cannabis Control Act.

MR. JUSTICE RYAN, also dissenting:

I join in the dissent of Chief Justice Underwood and add thereto the following:

The majority opinion does not focus on what I consider to be the critical aspect of the question of classification. The majority is concerned with the characteristics of the various drugs discussed and their effects on the human body and behavior pointing out similarities and differences. I do not consider these comparisons important. Instead we must be concerned with the purpose of the classification and the problems the legislature was attempting to alleviate thereby. In *Billings v. Illinois, 188 U.S. 97, at 102, 47 L.Ed. 400, 23 S.Ct. 272,* the court stated: "Things may have very diverse qualities, and yet be united in a class. They may have very similar qualities, and yet be cast in different classes.—All classification must primarily depend upon purpose—the problem presented".

In 1931 marijuana, opium and cocoa leaves were classified together in the Narcotic Drug Control Law (Ill.Rev.Stat. 1931, Ch. 38, par. 192(a) *et seq.*) and penalties were provided for the illegal sale and possession thereof. In 1957 Illinois adopted the Uniform Narcotic Drug Act. (Ill.Rev.Stat. 1957, ch. 38, par. 192.28-2.17.) The list of drugs brought within the Act had increased to eleven in number and by 1967 the number of drugs included in the classification had grown to fifteen. A reading of these various Acts makes it clear that the legislature was not attempting to classify drugs of similar characteristics and effects but was attempting to classify these drugs for the purpose of combating the social evil found in the illegal sale, possession and use of the same.

In 1967 the legislature enacted the Drug Abuse Control Act. (Ill.Rev.Stat. 1967, Ch. 111½, par. 801 *et seq.*) In this Act, as the Uniform Narcotic Drug Act, drugs of diverse characteristics and effects are grouped together for the purpose of controlling the illegal traffic in the various members of the class. The majority opinion concludes that marijuana more closely resembles the new list of drugs classified under the Drug Abuse Act, thus rendering the present classification of marijuana violative of the equal-protection clause.

The conclusion of the majority ignores the fact that traffic in marijuana had been a social problem of sufficient magnitude to warrant legislative action for many years. Material submitted with the briefs indicates that although a relatively small percentage of marijuana users become addicted to the so-called "hard drugs" a high percentage of "hard drug" addicts first became acquainted with the use of drugs through the use of marijuana. Also, certain studies indicate that marijuana is the most widely used drug among the young drug users. These are facts which the legislature may well have considered as justification for retaining marijuana under the Uniform Narcotic Drug Act and for not classifying it with the drugs listed in the Drug

Abuse Control Act. The presumption of the reasonableness of the classification is with the State and the same will not be set aside as a denial of equal-protection if any facts reasonably may be conceived to justify it. *Salsburg v. Maryland 346 U.S. 545, 98 L.Ed. 281, 74 S.Ct. 280; Metropolitan Casualty Ins. Co. v. Brownell, 294 U.S. 580, 584, 79 L.Ed. 1070, 1073, 55 S.Ct. 538.*

The defendant's brief has also focused on the characteristics and effects of the various drugs and has ignored the problem-to-be solved approach. The burden is on the defendant to present evidence which shows that the apparently reasonable basis for this classification does not exist. *(Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 99 L.Ed. 563, 75 S.Ct. 461; McGowan v. Maryland, 366 U.S. 420, 6 L.Ed.2d 393, 81 S.Ct. 1101.)* The defendant has failed to produce any evidence concerning the nature of the traffic in the various drugs or the need to control the same. The presumption of the validity of the classification must therefore prevail.

A further reason for my dissent concerns the failure of the defendant to present any evidence on the subject of the invalidity of the classification. A motion to quash the indictment raised the question but no evidence was offered by the defendant at the hearing thereon. The evidence offered at the trial concerned the question of guilt or innocence and not characteristics and effects of the drugs. The majority opinion acknowledges that "we must begin with the presumption that the classification is valid and must impose the burden of showing invalidity on the party challenging the classification." This burden is not satisfied by argument or briefs but by coming forward with proof, by presenting evidence. This the defendant has not done so there is no basis in the record for the findings and comparisons set forth in the majority opinion concerning the properties of the various drugs. Both the defendant and the People filed lengthy briefs containing citations to and quotations from many, many, articles, reports, and

356

studies. The briefs represent a very detailed and well prepared presentation of the entire subject but *are not evidence*. The burden was on the defendant to present facts and circumstances in evidence from which the determination could be made that the classification in question violates the equal-protection clause. *(Gadlin v. Auditor of Public Accounts, 414 Ill. 89, 95; Thillens v. Hodge, 2 Ill.2d 45, 56; Thillens v. Morey, 11 Ill.2d 579, 591.)* In *Union Cemetery Ass'n v. Cooper, 414 Ill. 23* this court held that a distinction in legislation is not arbitrary if any state of facts can be reasonably conceived that would sustain it, and the existence of that state of facts at the time the law was enacted must be assumed *in the absence of proof or judicial knowledge* to the contrary.

There is a great diversity of opinion as to the effects of marijuana. As the majority opinion states, knowledge in this area is not nearly complete. This court cannot, therefore, take judicial notice thereof. *(People v. Price, 257 Ill. 587, 594.)* The defendant having offered no evidence thereon, this court cannot make findings and comparisons of marijuana with the other drugs. With the record in this state, the defendant has not sustained the burden of proving the classification invalid.