STATE of Missouri, Respondent,

v.

Donald Ernest BURROW, Appellant.

No. 58405.

Supreme Court of Missouri,
Division No. 1.

Oct. 14, 1974.

John C. Danforth, Atty. Gen., William F. Arnet, Asst. Atty. Gen., Jefferson City, for respondent.

Jerry L. Reynolds, Donald E. Bonacker, Springfield, for defendant-appellant.

ROBERT R. WELBORN, Special Judge.

Appeal from judgment and sentence of five years' imprisonment on jury verdict of guilty to charge of selling marihuana. § 195.200, subd. 1(4), RSMo Supp.1973, V. A.M.S.

On January 25, 1973, a 15-year-old Springfield girl did not attend school and did not return home following school. The girl was "going with" the then 17-year-old appellant, Donald Ernest Burrow. The girl's father began a search for his daughter, believing that she was with Burrow. He obtained the assistance of a nephew, Tommy Lewis. The two drove around the Springfield area but failed to locate the girl.

At about 11:30 P.M., Officer Smart of the Greene County Narcotics Bureau, in response to a call from the father, called the father and was told of the daughter's running away with Burrow. He told the officer that Tommy Lewis knew that Burrow was dealing in marihuana and was about to make a sale in the vicinity of the Sycamore Inn. Officer Smart and Officer Hobson met the father and Lewis, accompanied by a third person, Jackie Coy, in the vicinity of the restaurant, but Burrow did not appear.

A discussion among the officers, the father and Lewis resulted in a plan by which Lewis would try to buy marihuana from Burrow, and, if he succeeded, Lewis and Burrow would be arrested and jailed to-

gether and Lewis would try to find where the girl was. Because the father "didn't look the part" only the officers and Lewis and Coy went forward with the plan.

The four in one auto left the vicinity of the Sycamore at around 2:00 A.M. and drove around looking for Burrow's car. Eventually, at around 3:00 A.M., they parked near the residence of Burrow's mother. Lewis went to the door and knocked. Burrow's mother answered the door and Lewis told her that if Donnie wanted to stay out of trouble, he'd better come talk to him. The mother awakened Donnie and he came to the door.

According to Lewis, he told Burrow that he was "in a lot of trouble" over the girl and asked whether he could help locate her. Burrow said no and the matter was dropped. Lewis told Burrow that he had some "cool people" with him and that they needed some "lids." Burrow went in the house, dressed and returned to the car with Lewis.

Burrow got in the car and said "You guys want four lids?" Officer Smart said, "Yeah, we'll take four lids." Burrow said, "Well, you'll have to drive me to my stash." The five drove a few blocks and stopped. Burrow got out of the auto and was gone three to five minutes. He returned with four plastic bags containing marihuana ("lids"). The officers paid Burrow $60 and then informed him that they were officers and placed Burrow and Lewis under arrest. Lewis was released and no charge filed against him.

At the trial of Burrow on a charge of selling marihuana, a chemist identified the substance in the bags as marihuana. The jury returned a verdict of guilty and fixed the punishment at five years' imprisonment. Four grounds of error are asserted on this appeal.

## I

### Refusal of Permission to Cross-examine and Impeach Lewis as a Witness

Lewis was endorsed as a witness for the state, but the state did not call him. The defendant then called Lewis. Before interrogation of the witness, the transcript here shows the following:

"MR. REYNOLDS (attorney for defendant): Your Honor, this witness, Tommy Lewis, is a witness that was endorsed by the state and is one who I thought would be called up by the state and they did not call him, so I call him myself and because it is my belief he will be hostile to me, I intend to cross examine him, and I realize, Ted, that I will not impeach the witness, but that I will cross examine him.

"THE COURT: The Court will grant you the privilege of cross examining him at such time as you feel his answers are hostile to you, without your making further record, but of course, as I understand the law, I understand you agree you won't try to impeach him, you understand that?

"MR. REYNOLDS: Yes, sir."

Lewis then testified, in response to defendant's counsel's interrogation, that the agents had proposed the plan whereby a purchase of marihuana would be made by Lewis from Burrow and that Lewis would be arrested and jailed with Burrow to find out where the girl was and the agents "would be able to make a bust of Donnie."

After such statement, defense counsel asked:

"Q. Okay. So that your testimony is that you did not make the statement and you did not devise the plan to make this arrest and then subsequent thereto you would be placed in jail with Donald Burrow?

"MR. STRECKER: Now, Your Honor, I object to that as leading.

"THE COURT: Objection sustained."

Defense counsel addressed no remark to the court following the ruling, but proceeded to examine the witness in detail concerning the plan and the agents' part in it. Some time later the following occurred in the course of defense counsel's interrogation:

"Q. So that the only way that your part of the plan to locate your cousin, the only way you could succeed was that the arrest would be made, you would be placed in jail and then, there at the jail you would have opportunity to talk with Donald Burrow and learn the location of your cousin?

"MR. STRECKER: Your Honor, I object to that as leading.

"THE COURT: Objection sustained."

Again, following the trial court's ruling, no request was addressed to the court and the interrogation continued.

■ On this state of the record, there simply is no basis for a claim of error based on the trial court's refusal to permit the cross-examination or impeachment of the witness. The trial court correctly ruled that cross-examination of the witness would be permitted if the witness was in fact hostile. When objection was made to two questions on the grounds that they were leading and sustained by the court, defense counsel did nothing to advise the court that he believed the hostility of the witness required that he be permitted to interrogate him as if on cross-examination. In such circumstances, the ruling of the trial court cannot be held error.

■ As for impeachment, defense counsel at the outset stated that he would not impeach the witness and at no time was there any offer of what, if any, evidence might have been available for impeachment purposes. Again, the trial court's ruling on this question cannot be held error.

II

Instruction

The verdict-directing instruction read:

"If you find and believe from the evidence beyond a reasonable doubt, that on or about the 26th day of January, 1973, the defendant, Donald Ernest Burrow, did wilfully, unlawfully and feloniously sell Marihuana to Jim Smart and the defendant was not unlawfully entrapped into doing so as submitted in Instruction No. 5, then you will find the defendant guilty of *sale of a controlled substance as charged in the information* and assess his punishment at confinement in the Missouri Department of Corrections for not less than five years nor more than life, and unless you find the facts so to be you will find the defendant not guilty."

Appellant attacks the underscored portion of the instruction on numerous grounds, but the assignment of error here must be limited to the grounds specified in the motion for new trial, to-wit, that the instruction was confusing and misleading.

The information did not charge the sale of a "controlled substance." It charged simply the sale of marihuana. The verdict-form instruction referred to the offense as "selling marihuana." Appellant contends that, since the term "controlled substance" was not used either in the information or at the trial, its appearance in the verdict-directing instruction and non-use in other instructions made the instruction misleading and confusing.

■ Although the information did not employ the term "controlled substance," the offense charged is denominated sale of a "controlled substance." § 195.200, subd. 1(5), RSMo Supp.1973, V.A.M.S. That marihuana is a controlled substance under Schedule I (§ 195.017, subd. 2(4)(j), RSMo Supp.1973, V.A.M.S.) is determinable as a matter of law. State v. Carter, 475 S.W.2d 85, 90[5] (Mo.1972). The fact

issue to be determined by the jury was whether or not the defendant illegally sold marihuana and the jury was required by the instruction to make such determination. Although the instruction employed the hitherto unused term "controlled substance," the basic factual issue was clearly submitted. The contention that the instruction was confusing and misleading is without merit.

## III

### Sufficiency of Evidence

Appellant contends that the verdict is unsupported by the evidence because there was no competent evidence that the narcotics agents had reasonable grounds to believe the appellant was engaged in the sale of marihuana. Appellant's contention that such evidence was an essential element of the state's case is based primarily upon the giving of an entrapment instruction in the language used in State v. Hammond, 447 S.W.2d 253 (Mo.1969). The language of the instruction approved in that case and here given included the following:

"The law recognizes two kinds of entrapment: unlawful entrapment and lawful entrapment. Where a person has no previous intent to violate the law, but is induced or persuaded by law enforcement officers to commit a crime, he is entitled to the defense of unlawful entrapment, because the law as a matter of policy forbids a conviction in such a case.

"On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that Government agents provide what appears to be a favorable opportunity is no defense, but is a lawful entrapment. *When, for example, the Government has reasonable grounds for believing that a person is engaged in the illicit sale of [marihuana], it is not unlawful entrapment for a Government agent to pretend to be someone else and to offer, either directly or through an informer, or other decoy, to purchase marihuana from* such suspected person." (Emphasis supplied)

The "reasonable grounds" proposition was not an issue in Hammond. Two other cases, State v. Taylor, 375 S.W.2d 58, 61 (Mo.1964), and State v. Stock, 463 S.W.2d 889, 892 (Mo.1971), made passing reference to the proposition, but neither held "reasonable suspicion" or "reasonable grounds" essential to avoid an entrapment defense. See Comment: "Entrapment: A Critical Discussion," 37 Mo.Law Rev. 633, 650–652 (1972).

The approved instruction on entrapment, MAI–CR No. 3.28 makes no requirement of "reasonable suspicion." "Reasonable suspicion" is only an evidentiary element to be considered in determining whether or not the defendant readily and willingly engaged in the criminal conduct and is not properly an independent element for proof of nonentrapment. Therefore, the assignment here based upon the competency of the evidence on the subject need not be considered, inasmuch as it was not an essential element of the state's proof.

## IV

### Constitutionality of Missouri Marihuana Statutes

Appellant contends: "The Missouri statutory scheme regarding marihuana violates defendant's rights under the due process and equal protection clauses of the Missouri and United States Constitutions."

In 1971, the Missouri General Assembly adopted its version of the Uniform Controlled Substances Act. Laws of Mo.1971, p. 237 et seq. The law classifies the substances subject to its control into five schedules. § 195.017, RSMo Supp.1973, V.A.M.S. Marihuana is included in Schedule I. § 195.017, subd. 2(4)(j), supra. Schedules I and II include the so-called "hard drugs" as well as marihuana. Insofar as this case is concerned, the punishment for the sale of all substances in Schedules I and II, including marihuana,

are the same. § 195.200, subd. 1(4), not less than five years nor more than life imprisonment. Penalties for possession of not more than 35 grams of marihuana and for the delivery of not more than 25 grams for no remuneration differ from penalties that apply to other substances in Schedules I and II (§ 195.200, subd 1(1) ), but those provisions are not here at issue. The so-called "hallucinogenic, hypnotic, somnifacient and stimulating" drugs are listed in Schedules III, IV and V. Illegal sale of such substances is punishable by imprisonment in the penitentiary for from two to ten years, or by confinement in the county jail for a term of not more than one year, or by a fine of not more than $1,000 or by both the fine and confinement. § 195.270, RSMo Supp.1973, V.A.M.S.

The appellant's attack upon the constitutionality of this scheme is premised as follows:

"Scientists are now in virtually unanimous agreement that marihuana has fundamendally different effects than heroin, opium, morphine and other so-called 'hard drugs.'

"The scientific community has found that marihuana is a non-addictive intoxicant or hallucinogen, having far fewer adverse effects than the so-called 'depressant or stimulant drugs' such as amphetamines and barbiturates.

\*    \*    \*    \*    \*    \*

"The continued classification of marihuana with the 'narcotic drugs' rather than with the 'hallucinogenic, hypnotic, somnifacient and stimulating drugs' with the same mandatory minimum penalties for a first conviction for sale of marihuana to an adult, violates defendant's rights under the due process and equal protection clauses of the Missouri and United States Constitutions."

Appellant candidly acknowledges that his brief on this point is an adaptation of that which convinced the Illinois Supreme Court in People v. McCabe, 49 Ill.2d 338,

275 N.E.2d 407 (1971), to hold that the classification of marihuana under the Illinois Narcotic Drug Act, which provided for a mandatory 10-year minimum sentence on first conviction rather than under the Drug Abuse Control Act which provided for a maximum jail term of one year on first conviction, was arbitrary and deprived a defendant charged with the sale of marihuana of equal protection. As the majority opinion in that case noted, the Illinois legislature had, by the time that the McCabe case was decided, changed the treatment accorded marihuana offenders. According to one of the dissenting judges, the McCabe case could have been disposed of by imposition of the penalty provisions of the new act and without reaching any constitutional questions. See State v. Reiley, 476 S.W.2d 473 (Mo.1972).

Appellant in his brief and the accompanying appendices cites considerable authority in support of the proposition that the effects on the user of marihuana and the so-called "hard" drugs differ widely and that the effects of marihuana are less severe or dangerous than the "hallucinogenic, hypnotic, somnifacient and stimulating drugs," dealt with in Schedules III, IV and V of the Missouri law. Such, however, is not the sole basis for legislative classification insofar as the fixing of penalties for the sale of such substances is concerned.

In State v. Wadsworth, 109 Ariz. 59, 505 P.2d 230 (1973), the Arizona Supreme Court dealt with much the same argument as here presented. It rejected the contention that punishment of the sale of marihuana more severely than the sale of "dangerous" drugs was unconstitutional. Under the Arizona version of the Uniform Controlled Substances Act, sale of the so-called "hard" drugs was punishable by imprisonment for five years to life, with ineligibility for parole or other relief for five years. § 36.–1002.02, A.R.S. The sale of marihuana was punished separately, but the only difference in the punishment was that three years served on a sentence were re-

quired before eligibility for parole arose. § 36–1002.07, A.R.S.

In passing on the classification question, the court stated (505 P.2d 232–234):

"Our statutes, then, provide that the sale or furnishing of marijuana, though included in the narcotic drugs section, is punished somewhat less severely than the sale of narcotic drugs 'other than marijuana', but more severely than the sale or giving away of dangerous drugs including 'L.S.D.' and 'speed.'

"In evaluating defendant's claim of denial of equal protection in the classification of marijuana with narcotic drugs, we must look to the United States Supreme Court for guidance. That court has said:

" 'The rules by which this contention must be tested, as is shown by repeated decisions of this court, are these:

" '1. The equal-protection clause of the 14th Amendment does not take from the State the power to classify in the adoption of police laws, but admits the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary.

" '2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality.

" '3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.

" '4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.' Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78–79, 31 S.Ct. 337, 340, 55 L.Ed. 369, 377 (1911).

"And:

" 'Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. As statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. (citations omitted)' McGowan v. Maryland, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961).

"The defendant contends that scientists are now in virtually unanimous agreement that marijuana has fundamentally different effects than heroin, opium, morphine, and other so-called 'hard drugs,' and that in response to this 'overwhelming' scientific evidence the continued classification of marijuana with narcotic drugs rather than with dangerous drugs and the resulting severe penalty is a violation of defendant's rights under the equal protection clause of the Fourteenth Amendment of the United States Constitution. The defendant quotes the United States Supreme Court as follows:

" ' * * * When the law lays an unequal hand on those who have committed intrinsically the same quality of offense and sterilizes one and not the other, it has made as an invidious a discrimination as if it had selected a particular race or nationality for oppressive treatment. * * *' Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655, 1660 (1942).

"Defendant has filed with this court an extensive if not exhaustive appendix on the subject, containing numerous articles by recognized authorities who discuss the alleged arbitrary classification of marijuana with narcotic rather than with dangerous

drugs. These articles in the main are concerned with the characteristics of the various drugs discussed and their effects on the human body and resulting behavior of the user. For the purpose of this opinion, we will admit that dangerous drugs such as 'L.S.D.' and 'speed' are more harmful to the user than marijuana, and that scientifically marijuana may not necessarily be included with the drugs defined in the narcotic drug statute, § 36–1001 A.R.S.

"[1] This is not, however, persuasive. The fact that a drug in the list of narcotic drugs may be less harmful than those listed in the dangerous drug statute does not make the classification unreasonable.

"The classification, we believe, is reasonable and not arbitrary despite the fact that some of the drugs listed could be classified differently. We agree with the dissent of Chief Justice Underwood of the Illinois Supreme Court who said:

" 'The majority's lengthy discussion of the characteristics and effects of marijuana as compared to other prohibited drugs clearly illustrates that no two drugs are identical and that marijuana is also quite different from the stimulant or depressant drugs with which defendant seeks to classify it. The fact that a substantial body of scientific and medical opinion now considers marijuana to be more nearly like the drugs included in the Drug Abuse Control Act than those prohibited by the Narcotic Drug Act does not, in my opinion, necessitate the conclusion that there was no rational basis for the classification in question. Medical and scientific opinion is even now by no means unanimous in condemnation of classifications of marijuana with "hard drugs" and, as the majority notes, "knowledge in this whole area is not nearly complete." In the absence of more nearly conclusive evidence that the legislative judgment was devoid of any rational basis, a finding of unconstitutionality is unwarranted, for few rules of law are more soundly bottomed than that which pro-

scribes judicial interference with legislative discretion.' People v. McCabe, 49 Ill. 2d 338, 352, 353, 275 N.E.2d 407, 414 (1971).

"[2] The legislative intent in this State was to proscribe the use of marijuana, not to scientifically categorize it according to its composition and effect, and we believe there was a reasonable basis for the classification of marijuana with the narcotic drugs rather than the dangerous drugs.

"[3, 4] We believe there is, however, another reason why the classification and especially the penalties imposed can be sustained. The fact that an objectionable practice is widespread may mandate a stiffer penalty in order to discourage its continued use than a more harmful, less often used practice. We take judicial notice of the fact that marijuana is one of the most widely used drugs among our young. Also, we note that Arizona's geographical proximity to Mexico, a primary source of marijuana, contributes to the magnitude of the problem in this State. These are facts which our State legislature may have considered as justification for retaining marijuana under the Narcotic Drug Act, with its resulting more severe penalties, rather than classifying it with the drugs listed in the Dangerous Drug Act with its lesser penalties."

Missouri's situation differs from that of Arizona insofar as proximity to Mexico is concerned, but the General Assembly certainly could recognize the prevalence of the use of marihuana and endeavor to meet the problem by visiting the severe penalty upon the seller.

In Warren v. State, 52 Ala.App. 35, 288 So.2d 817 (1973), the Court of Criminal Appeals of Alabama considered the argument based on the McCabe case, supra, and stated (288 So.2d 821):

"Our research indicates that the McCabe view is apparently the minority one. Several of our sister states have expressly re-

jected the approach taken in McCabe, supra. Recently, in Renya v. State, 434 S. W.2d 362, the Texas Criminal Court of Appeals held that the inclusion of marihuana in the same category as other addicting drugs more potent in destructive potential was not a violation of equal protection or due process of law under the Texas and United States Constitutions. The Renya decision also reviews the relevant cases from other states on this point. Among these cases are, People v. Stark, 157 Colo. 59, 400 P.2d 923; Spence v. Sacks, 173 Ohio St. 419, 183 N.E.2d 363; State v. Page, 395 S.W.2d 146 (Mo.); Jenkins v. State, 215 Md. 70, 137 A.2d 115; People v. Mistriel, 110 Cal.App.2d 110, 241 P.2d 1050. Other recent state decisions on this point are Willoughby v. State, 481 S.W.2d 893 (Tex.Cr.App.); Finklea v. State, 481 S.W.2d 889 (Tex.Cr.App.); Hunter v. State, 481 S.W.2d 806 (Tex.Cr.App.); Sanders v. State, 482 S.W.2d 648 (Tex.Cr. App.); State ex rel. Scott v. Conaty, 187 S.E.2d 119 (W.Va.Sp.Ct. of App.); Borras v. State, 229 So.2d 244 (Fla.1969); Raines v. State, 225 So.2d 330 (Fla.1969); State v. Kantner, 53 Haw. 327, 493 P.2d 306."

Appellant has not sustained his burden of demonstrating a lack of rational basis for the legislative classification here attacked. The fact that the Missouri statute might, as appellant contends, have been modeled after the Federal 1970 Comprehensive Drug Abuse and Control Act (21 U.S.C. § 801 et seq.) does not preclude the exercise of judgment by the Missouri General Assembly as to the penalties it might elect to impose under the Missouri act. In this state, fixing of criminal punishment is a legislative matter. State v. Golightly, 495 S.W.2d 746, 753[4–6] (Mo.App.1973). The authority of the General Assembly is in no manner derivative from federal legislation.

Judgment affirmed.

BARDGETT, P. J., and HOLMAN, J., concur.

SEILER, J., not sitting.